EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Santander de Puerto Rico<br><br>Recurridos<br><br>v.<br><br>Brenda Correa García<br><br>Peticionaria | Certiorari<br><br>2016 TSPR 201<br><br>196 DPR ____ |
| Ismael Santana Serrano<br><br>Recurrido<br><br>v.<br><br>Gloria Antony Ríos<br><br>Peticionaria | |

Número del Caso: CC-2014-431
CC-2014-1062

Fecha: 16 de septiembre de 2016

Tribunal de Apelaciones:

Región Judicial de San Juan y Guayama, Panel I

Abogados de la parte Peticionaria:

Lcdo. Felipe Sanabria Quiñones
Lcdo. Luis Rodríguez Nevarez
Lcdo. Rafael A. González Navedo

Abogado de la parte Recurrida:

Lcdo. Daniel F. Marrero Guerrero

Materia: Ley de Mediación Obligatoria. Ley Núm. 184-2012. Requisito jurisdiccional de ordenar la celebración de una vista de mediación en los casos de ejecución de hipoteca de residencia principal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Banco Santander de Puerto Rico<br><br>Recurridos<br><br>v.<br><br>Brenda Correa García<br><br>Peticionaria<br><br>Ismael Santana Serrano<br><br>Recurrido<br><br>v.<br><br>Gloria Antony Ríos<br><br>Peticionaria | CC-2014-0431<br>Cons. con<br>CC-2014-1062 | Certiorari |
|---|---|---|

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 16 de septiembre de 2016.

Hoy se nos presenta la oportunidad de interpretar la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal" (Ley para Mediación Compulsoria), Ley Núm. 184-2012, 32 LPRA secs. 2881-2996, a los fines de determinar si ésta le impone al tribunal la obligación de ordenar la celebración de una vista de mediación en los casos de ejecución de hipoteca de una residencia principal como **"requisito jurisdiccional"** —es decir, como condición previa para que el tribunal pueda dictar sentencia y ordenar la

venta judicial de un inmueble— o si dicha vista es de carácter discrecional —pues sólo tiene que ordenarse en los casos que el tribunal "considere necesarios"—.

Luego de armonizar las disposiciones que aparentan ser contradictorias en la Ley para Mediación Compulsoria, disponemos que —después de presentada la contestación a la demanda— la citación para una vista de mediación es un requisito jurisdiccional sin cuyo cumplimiento el tribunal no podrá dictar sentencia ni ordenar la venta judicial de un inmueble que se utiliza como residencia principal, salvo en los casos en los que el deudor esté en rebeldía o cuando el tribunal haya eliminado sus alegaciones.

## I

En los casos que hoy atendemos, el Tribunal de Primera Instancia dictó unas sentencias en las que declaró con lugar unas demandas de cobro de dinero y ejecución de hipoteca de unos inmuebles que servían como residencia principal de los deudores demandados. Cabe señalar que las sentencias se dictaron con posterioridad a la fecha en que entró en vigor la Ley para Mediación Compulsoria (el 1 de julio de 2013, conforme al Art. 9 de la Ley para Mediación Compulsoria).

Inconformes, los deudores cuestionaron las sentencias emitidas por el fundamento de que el Tribunal de Primera Instancia las había dictado sin tener jurisdicción para ello, pues no había ordenado la celebración de la vista de mediación requerida por la Ley para Mediación Compulsoria.

Es esencial señalar que los deudores contestaron las demandas, no estaban en rebeldía y el tribunal no había eliminado sus alegaciones. A continuación, relatamos los hechos particulares de cada caso.

## CC-2014-0431

El 4 de marzo de 2013, el Banco Santander de Puerto Rico (Santander) presentó una demanda en contra de la Sra. Brenda Correa García con el propósito de ejecutar un bien inmueble que servía como residencia principal de la demandada y sus hijos. Según Santander, la señora Correa García había incumplido con las condiciones del préstamo hipotecario, por lo que solicitó al tribunal que dictara sentencia a su favor declarando vencida la deuda y ordenara la venta en pública subasta del bien en cuestión. Por su parte, la señora Correa García contestó la demanda y negó adeudar suma alguna a Santander.

Así las cosas, el 31 de mayo de 2013 Santander solicitó que se dictara sentencia sumaria a su favor. A tales fines, anejó una declaración jurada de un empleado del banco en la que éste declaraba que la señora Correa García se había negado a satisfacer las mensualidades del préstamo hipotecario desde el 1 de junio de 2012; una certificación registral del inmueble y una copia del pagaré hipotecario y de la escritura de constitución de hipoteca. Posteriormente, Santander señaló que la demandada no cualificaba para una modificación de hipoteca, por lo que no era necesario referir el caso a

mediación. Ante esto, la señora Correa García señaló que su pago no se ajustaba a su capacidad económica y añadió que las razones aducidas por Santander no justificaban que el caso no se refiriera a mediación, como lo requiere la Ley para Mediación Compulsoria.

A pesar de lo informado por la señora Correa García, el Tribunal de Primera Instancia dictó sentencia sumaria en su contra. Sin embargo, no emitió expresión alguna en torno al porqué no ordenó la celebración de una vista de mediación. Inconforme, la señora Correa García presentó una moción de reconsideración en la que expuso lo siguiente:

> **Hasta donde sabemos, la mediación no fue ordenada ni se ha celebrado en este caso; la demandada no se encuentra en rebeldía, ni sus alegaciones fueron suprimidas de forma alguna.** Por el contrario, contestó la demanda y se encontraba en proceso de descubrimiento de prueba […]
>
> Para todos los fines legales pertinentes, consignamos que el acreedor hipotecario tiene pleno conocimiento de que la propiedad objeto de ejecución es la vivienda principal de la demandada […] y que la misma cuenta con exoneración contributiva. (Énfasis suplido).

Por su parte, Santander se opuso a la reconsideración fundándose en lo siguiente: **"una mediación […] es un ejercicio fútil en el presente caso por la demandada no tener capacidad económica** […]". (Énfasis suplido). Así las cosas, el Tribunal de Primera Instancia declaró "no ha lugar" la moción de reconsideración.

Posteriormente, la señora Correa García acudió al Tribunal de Apelaciones. En torno a la procedencia de la

mediación, dicho foro interpretó lo siguiente: "Surge de la primera oración del Artículo 3 de la Ley 184-2012 que la mediación compulsoria es de carácter discrecional toda vez que sólo será un "deber" celebrarla cuando el tribunal lo considere "necesario"". Así, confirmó la Sentencia al concluir que en este caso no se justificaba el referido a mediación debido a que la señora Correa García no demostró cómo la mediación le pudo haber beneficiado.

Oportunamente la señora Correa García presentó una Petición de *certiorari* ante este Tribunal. Expedimos el recurso y el caso quedó sometido en los méritos el 9 de diciembre de 2015.

**CC-2014-1062**

El 27 de marzo de 2012, el Sr. Ismael Santana Serrano presentó una demanda sobre ejecución de hipoteca en contra de la Sra. Gloria Antony Ríos. Alegó que era el tenedor de un *Pagaré Hipotecario al Portador* garantizado por un inmueble perteneciente a la demandada y que la deuda garantizada estaba vencida. Por su parte, la señora Antony Ríos contestó la demanda y adujo que no reconocía la totalidad de la deuda. Más adelante, el señor Santana Serrano presentó una moción de sentencia sumaria a la que anejó varios documentos que, según adujo, acreditaban la existencia de la deuda. Luego de algunos incidentes procesales, el Tribunal de Primera Instancia concedió varias prórrogas a la señora Antony Ríos para que compareciera a través de un abogado y se opusiera a la

moción de sentencia sumaria. Ante su incumplimiento, el tribunal dictó sentencia en su contra y le ordenó pagar la suma adeudada y, en su defecto, la venta en pública subasta del inmueble. Destacamos que la señora Antony Ríos contestó la demanda, no estaba en rebeldía y el tribunal no había eliminado sus alegaciones.

En desacuerdo, la señora Antony Ríos presentó un recurso ante el Tribunal de Apelaciones en el que planteó, por primera vez, que el caso debía referirse a mediación, al tenor de la Ley para Mediación Compulsoria. Además, señaló que, ante el incumplimiento de tal requisito de carácter jurisdiccional, el tribunal estaba impedido de dictar sentencia. Por su parte, el señor Santana Serrano planteó que no existía controversia sobre la existencia de la deuda debido a que la señora Antony Ríos no se opuso a la moción de sentencia sumaria. Además, adujo que: (1) no procedía atender el planteamiento sobre el requisito de vista de mediación, ya que éste no se había presentado ante el Tribunal de Primera Instancia; (2) la Ley para Mediación Compulsoria no le aplicaba porque él no era una entidad bancaria o crediticia, y (3) el requisito de mediación es de carácter discrecional y no se justificaba en este caso.

Luego de estudiar los argumentos de ambas partes, el Tribunal de Apelaciones confirmó la Sentencia. Concluyó que el foro de instancia podía disponer del pleito sumariamente porque la señora Antony Ríos no creó

controversia sobre los hechos propuestos en la moción de sentencia sumaria. Ahora bien, el foro apelativo intermedio no discutió la aplicabilidad de la Ley para Mediación Compulsoria.

Oportunamente, la señora Antony Ríos presentó una Petición de *certiorari* ante este Tribunal. Expedimos el recurso y lo consolidamos con el CC-2014-431.

## II

**Disposiciones aparentemente contradictorias en la Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal**

La controversia que atendemos, sobre si el señalamiento para vista de mediación es un requisito discrecional o jurisdiccional, surge a razón de una aparente contradicción en el texto del Art. 3 de la Ley Núm. 184-2012, 32 LPRA secs. 2881-2996, intitulada como la "Ley para Mediación **Compulsoria** y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal". (Énfasis suplido). Esta ley se aprobó el 17 de agosto de 2012 y tiene el propósito de proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis económica. Mediante la misma se concede a las partes una vista de mediación en la que el deudor podrá obtener información sobre los remedios que tiene disponibles para evitar la pérdida de su residencia principal y, a su vez, se le provee la oportunidad de sentarse a negociar con su acreedor.

La descripción de la ley es la siguiente: "Para crear la ley que inserte el proceso de mediación **compulsorio** entre el acreedor hipotecario y el deudor hipotecario en los procesos de ejecución de Hipoteca (Foreclosure) de propiedades dedicadas a vivienda en Puerto Rico". (Énfasis suplido). La Exposición de Motivos lee como sigue:

> […] La escasez de recursos económicos en Puerto Rico ha ocasionado que muchos dueños de viviendas, le hayan ejecutado su vivienda por parte de la entidad bancaria o crediticia que ostenta el préstamo hipotecario sobre dicha propiedad. […]
>
> El Congreso de los Estados Unidos sometió el Proyecto del Senado 2912, titulado "*Foreclousure Mandatory Act of 2009*", con el propósito de **obligar** a que todo deudor hipotecario con garantías federales **tenga que someterse compulsoriamente** a un proceso de mediación, previo a la ejecución de la hipoteca por parte del acreedor hipotecario.
>
> El Gobierno Estatal, al igual que el Gobierno Federal, debe colaborar y buscar alternativas que logren disminuir los procesos de ejecución de hipotecas y evitar al máximo posible que nuestros ciudadanos sigan perdiendo sus propiedades. **La realidad es que estas alternativas existen y el público las desconoce.** […]
>
> A tenor con lo antes indicado, es imprescindible que la Asamblea Legislativa de Puerto Rico cree una Ley con el propósito de crear un proceso de mediación **compulsoria** ante los tribunales de Puerto Rico o ante los foros administrativos correspondientes, **previo a llevar un proceso de ejecución de hipoteca** (foreclousure) de cualquier propiedad principal de vivienda en Puerto Rico por cualquier entidad bancaria. […] (Énfasis suplido).[1]

El Art. 2 de la Ley para Mediación Compulsoria, 32 LPRA sec. 2881, provee las siguientes definiciones:

(a)  Mediación: Un proceso de intervención, no adjudicativo, en el cual un interventor o una interventora neutral (mediador o mediadora) ayuda o asiste a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable para resolver su controversia.

---

[1] Exposición de Motivos de la Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal (Ley para Mediación Compulsoria), Ley Núm. 184-2012, 32 LPRA secs. 2881-2996.

(b)   Mediación **Compulsoria**: En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, de una propiedad residencial que constituya una vivienda principal, **se celebrará una reunión compulsoria de mediación** […] presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. **En dicha reunión el acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal**. El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal.

(c)   **Acreedor hipotecario: Significa cualquier persona natural** o jurídica o una entidad prestataria o financiera o un banco o una cooperativa debidamente autorizados por las leyes de Puerto Rico y las leyes de los Estados Unidos de América para conceder o que conceda préstamos con garantía hipotecaria sobre una residencia o vivienda principal.

(d)   […]

(e)   Residencia o Vivienda Principal: Aquella que se utiliza como el hogar principal del deudor o del deudor y su familia inmediata; y que para fines contributivos sobre bienes inmuebles es aquella para la cual aplicaría la exención contributiva principal. (Énfasis suplido).

El proceso para llevar a cabo la "mediación compulsoria" se encuentra regulado por el Art. 3 de la Ley para Mediación Compulsoria, 32 LPRA sec. 2882, de la siguiente forma:

**Será deber del tribunal**, en los casos que considere necesarios, dentro de los sesenta (60) días después de presentada la alegación responsiva por parte del deudor hipotecario demandado y antes de que se señale la conferencia con antelación al juicio, bajo apercibimiento de desacato, una vista o acto de **mediación compulsorio** que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya

una vivienda principal. Esto será un **requisito jurisdiccional** en los procesos a llevarse a cabo ante los tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda personal del deudor o de los deudores **sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial** de la propiedad gravada con la hipoteca cuya ejecución se solicita. […]

De no presentarse el deudor, al procedimiento de mediación o de no cumplir con el acuerdo alcanzado con el acreedor hipotecario como resultado del proceso de mediación, la institución financiera actuará de la forma acordada en el contrato o pagaré efectuado el día de la transacción original de hipoteca. (Énfasis suplido).

En cuanto a quiénes tendrán derecho a una vista de mediación, el mismo Art. 3 dispone que:

**El deudor tendrá derecho únicamente a un procedimiento de mediación** en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal, **siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía, o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal.** (Énfasis suplido).[2]

Como apreciamos, el Art. 3 de la Ley para Mediación Compulsoria señala que "[s]erá deber del tribunal" ordenar una "vista o acto de mediación **compulsorio**" y dispone que esto es un "**requisito jurisdiccional** […] **sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial** […] siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía, o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal".[3] Por otro lado, el mismo Art.

---

[2] Art. 3 de la Ley para Mediación Compulsoria, 32 LPRA sec. 2882.

[3] Íd.

3 dispone que la vista solo se llevará a cabo **"en los casos que [el tribunal] considere necesarios"**, lo que parece añadir carácter discrecional al proceso.[4] Como explicaremos en esta Opinión, estas disposiciones de la Ley para Mediación Compulsoria no son contradictorias entre sí porque se pueden armonizar.

Sobre las contradicciones en una ley, los tratadistas R. Elfren Bernier y José A. Cuevas Segarra, en su obra *Aprobación e Interpretación de las Leyes en Puerto Rico*, indican que "[s]i aparece claramente que cierta palabra, frase o disposición, fue aprobada por inadvertencia o error, especialmente si es contraria al resto de la ley o limitaría la efectividad de ésta, se pueden eliminar".[5] Esta norma fue discutida por este Tribunal en Roig Commercial Bank v. Buscaglia, Tes., 74 DPR 986, 998 (1953), en Passalacqua v. Mun. de San Juan, 116 DPR 618, 623 (1985) y en Aguadilla Paint Center v. Esso, 183 DPR 901, 922 (2011). Ahora bien, debemos aclarar que esta doctrina —que permite la eliminación de palabras, frases o disposiciones contradictorias— no deja sin efecto la prohibición de que los tribunales no pueden otorgar un significado distinto a una ley cuando su lenguaje es

---

[4] Íd.

[5] R. Elfren Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed. Rev., San Juan, Publicaciones JTS Inc., 1987, Vol. I, pág. 359. Valga destacar que esta norma tiene ciertas limitaciones, especialmente en la esfera penal. Íd., pág. 362.

claro.[6] En <u>Roig Commercial Bank v. Buscaglia, Tes.</u>, supra,

discutimos esta diferencia cuando expresamos lo siguiente:

> Aunque las cortes no pueden eliminar o cambiar el lenguaje de un estatuto para darle efecto a una supuesta intención legislativa, las palabras y las frases pueden ser alteradas o sustituídas cuando ello sea necesario para evitar repugnancia o inconsistencia en la ley, y para darle efectividad a la intención manifiesta de la legislatura.
>
> **La intención legislativa debe prevalecer sobre la letra estricta de la ley, cuando el seguir el tenor literal de la ley pueda producir disposiciones contradictorias.**
>
> **Es cuando no surge alguna contradicción o inconsistencia que es aplicable la regla general que prohíbe a un tribunal el desviarse del significado literal de un estatuto.** (Énfasis suplido).

**Antes de continuar, es importante destacar que al realizar un análisis de disposiciones que aparentan ser contradictorias entre sí, los tribunales deben primeramente intentar realizar una interpretación armoniosa de la ley de manera que sus disposiciones se logren hacer compatibles y no contradictorias.**[7]  Ello se fundamenta en el canon de interpretación hermenéutica sobre lectura armoniosa que exige que al interpretar una ley los tribunales deben armonizar, hasta donde sea posible, todas sus disposiciones con el propósito de lograr una interpretación integrada, lógica y razonable de

---

[6] El Art. 14 del Código Civil, 31 LPRA sec. 14, dispone que "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".

[7] Véase A. Scalia y B.A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u>, 1ra ed., Minnesota, Thomson/West, 2012, pág. 180. Véase también <u>S.L.G. Solá-Moreno v. Bengoa Becerra</u>, 182 DPR 675, 692 (2011), donde expresamos que "cuando hay un lenguaje confuso es deber del tribunal llenar esas lagunas y armonizar las disposiciones que encuentre conflictivas".

la intención legislativa.[8] "Armonizar" significa "[p]oner en armonía, o hacer que no discuerden o se rechacen dos o más partes de un todo, o dos o más cosas que deben concurrir al mismo fin".[9] Así, las secciones, párrafos, frases y oraciones que componen una ley no deben ser interpretadas de forma aislada, sino que deben analizarse en conjunto tomando en consideración todo su contexto de manera integral.[10]

**De conformidad con lo expuesto, aclaramos que no puede haber justificación en concluir innecesariamente que unas disposiciones están en conflicto si éstas se pueden leer armónicamente.**[11] Es entonces cuando una disposición no puede ser armonizada con el resto de la ley que se puede declarar contradictoria, con el efecto que ello conlleve en cada caso particular.[12]

Uno de los principios medulares en la interpretación de la ley se encuentra recogido en el Art. 14 de nuestro Código Civil, 31 LPRA sec. 14, que dispone que "[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de

---

[8] Véase Spyder Media, Inc. v. Municipio Autónomo de San Juan, 2016 TSPR 10, __ DPR __ (2016); AMPR v. Srio. Educación, E.L.A., 178 DPR 253, 266 (2010); Matos v. Junta Examinadora, 165 DPR 741, 749 (2005).

[9] Real Academia Española, Diccionario de la lengua española, 22da ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 207.

[10] Véase Spyder Media, Inc. v. Municipio Autónomo de San Juan, supra; Trigo Margarida v. Junta Directores, 187 DPR 384, 395 (2012); Soc. Asist. Leg. v. Ciencias Forenses, 179 DPR 849, 863 (2010); CBS Outdoor v. Billboard One, Inc., 179 DPR 391, 417 (2010), y Matos v. Junta Examinadora, 165 DPR 741, 749 (2005).

[11] A. Scalia y B.A. Garner, op. cit., pág. 180.

[12] Íd.

ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". En aras de cumplir con la norma citada, el primer paso que los tribunales debemos llevar a cabo al interpretar un estatuto es remitirnos al texto de la ley, puesto que, cuando el Legislador se ha manifestado en un lenguaje claro e inequívoco, el texto de la ley representa la expresión por excelencia de la intención legislativa.[13] Por otra parte, el método para analizar las expresiones en una ley que son dudosas se recoge en el Art. 19 del Código Civil, 31 LPRA sec. 19, que orienta que "[e]l medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla". A este proceso de interpretar las leyes se le conoce como la hermenéutica legal y conlleva auscultar cuál ha sido la voluntad legislativa con el propósito de hacerla cumplir.[14] Para ello se examina el proceso legislativo que, por lo general, comienza con un proyecto de ley que se remite a la comisión pertinente para que lo estudie y emita un informe con recomendaciones, y culmina con el debate en el hemiciclo, recogido en el Diario de Sesiones.[15]

---

[13] Spyder Media, Inc. v. Municipio Autónomo de San Juan, supra; Soc. Asist. Leg. v. Ciencias Forenses, supra, pág. 862; AMPR v. Srio. Educación, ELA, 178 DPR 253, 266 (2010).

[14] Elfren Bernier y Cuevas Segarra, op. cit., pág. 241.

[15] Íd., pág. 242.

De conformidad con lo anterior, y con el objetivo de determinar el propósito del estatuto y de la frase "en los casos que considere necesarios", nos remitimos al historial legislativo y al Diario de Sesiones de las cámaras legislativas.[16] Encontramos que el P. del S. 1434 de 25 de febrero de 2010 fue el proyecto original que se presentó y su Art. 3 leía de la siguiente manera:

> **Será deber del Tribunal**, antes de señalar fecha para la celebración del juicio, bajo apercibimiento de desacato, **señalar para una vista preliminar o acto de mediación compulsorio** que presidirá el juez de la corte para ofrecer al deudor hipotecario de buena fe todas las alternativas viables disponibles en el mercado para poder salvar la hipoteca. **Esto será un requisito jurisdiccional** como parte de los procesos a llevarse a cabo al momento una ejecución de hipoteca ante los Tribunales o foros administrativos de Puerto Rico. […] (Énfasis suplido).

Posteriormente, las Comisiones de Banca, Asuntos del Consumidor y Corporaciones Públicas y de lo Jurídico Civil del Senado propusieron realizar varias enmiendas al P. del S. 1434, pero recomendaron dejar inalterado el carácter "compulsorio" y "jurisdiccional" de la mediación.[17] Así, el 13 de febrero de 2012, el Senado aprobó el proyecto con las disposiciones sobre obligatoriedad y carácter jurisdiccional del requisito de mediación.[18]

---

[16] Véase historial del P. del S. 1434 en el *Sistema de Información del Trámite* de la Oficina de Servicios Legislativos disponible en http://www.oslpr.org/legislatura/tl2009/tl_busca_avanzada.asp (última visita el 5 de mayo de 2016).

[17] Véase Informe de las Comisiones de Banca, Asuntos del Consumidor y Corporaciones Públicas y de lo Jurídico Civil del Senado de Puerto Rico, al P. del S. 1434 de 25 de febrero de 2010, y Entirillado del Informe.

[18] P. del S. 1434, aprobado en el Senado el 13 de febrero de 2012, 16ta Asamblea, 3ra Sesión Legislativa Ordinaria.

Al referírsele el proyecto, la Cámara de Representantes lo remitió a sus Comisiones de lo Jurídico y Comisión de Desarrollo Económico, Planificación, Comercio, Industria y Telecomunicaciones, las que, en su Informe, recomendaron aprobar el proyecto sin enmiendas.[19] Ahora bien, del Diario de Sesiones de la Cámara de Representantes surge que al someterse el proyecto a votación en la Cámara se propusieron varias enmiendas en sala, una de ellas para incorporar la frase "en los casos que considere necesarios". Estas palabras se ubicaron justo después de la frase "Será deber del tribunal" del Art. 3 del proyecto. La Cámara de Representantes aprobó el proyecto con las enmiendas propuestas en sala, sin embargo del Diario de Sesiones no surgen las razones para las enmiendas, pues no hubo discusión en el hemiciclo.[20]

---

[19] Véase Informe de las Comisiones de lo Jurídico y Comisión de Desarrollo Económico, Planificación, Comercio, Industria y Telecomunicaciones de la Cámara de Representantes, al P. del S. 1434 de 25 de febrero de 2010.

[20] P. del S. 1434 aprobado con enmiendas por la Cámara de Representantes el 25 de junio de 2012, Diario de Sesiones de la Cámara de 25 de junio de 2012, Séptima Sesión Ordinaria, Decimosexta Asamblea Legislativa, págs. 220, 243 y 246. Transcribimos lo sucedido:
SR. MÉNDEZ NÚÑEZ: Vamos a entrar ahora en la consideración del Proyecto del Senado 1434. Viene informado por la Comisión de lo Jurídico, Desarrollo Económico, Planificación, Comercio, Industria y Telecomunicaciones, **tenemos enmiendas en sala**, señora Presidenta.
SRA. PRESIDENTA (GONZÁLEZ COLÓN): Adelante.
SR. MÉNDEZ NÚÑEZ: Son las siguientes: […] **En la página 5, línea 11, eliminar "señalar, a solicitud de parte o motus propio [sic]", y sustituir por "en los casos que considere necesario".** En la página 5, línea 14, eliminar "o reunión sobre el estado del procedimiento en el caso". En la página 5, líneas 17 a la 19, después de "selecciones", eliminar "pero que no podrá ser en las oficinas del acreedor hipotecario o de sus abogados o representantes legales o asesores para ofrecer el deudor hipotecario de buena fe.". Página 6, línea 3, eliminar "de buena fe,". Página 6, líneas 6 a la 10, después de "hipoteca.", eliminar "Durante el proceso de mediación compulsoria, el

Posteriormente el proyecto se remitió al Senado, que fue

la cámara de origen, donde —también sin discusión en el

hemiciclo— se aprobó el proyecto con las enmiendas

sometidas por la Cámara de Representantes.[21]

Es importante enfatizar que a pesar de haber añadido

la frase "en los casos que considere necesarios" al Art.

3, los legisladores dejaron inalteradas las disposiciones

que otorgan carácter "compulsorio" y "jurisdiccional" a la

vista de mediación. Una lectura de estas disposiciones

refleja que estas aparentan ser contradictorias. Por ello,

nos corresponde aplicar la norma de interpretación sobre

disposiciones aparentemente contradictorias en una ley con

_____

Tribunal, previa notificación de parte de que se ha iniciado el mismo ordenará la paralización automática de la acción civil, por un periodo no menor de cuarenta y cinco (45) días, contados a partir del comienzo del mismo, Dicha paralización podrá ser dejada sin efecto por el Tribunal a solicitud de parte o por justa causa". Página 6, línea 21, después de "mismo" añadir "en caso de que se presente una acción civil sobre procedimiento de ejecución hipotecaria". […] Esa es la enmienda al texto.
SRA. PRESIDENTA (GONZÁLEZ COLÓN): ¿Alguna otra?
SR. LÓPEZ MUÑOZ: Casi na'.
SRA. PRESIDENTA (GONZÁLEZ COLÓN): Si no hay objeción a las enmiendas al texto, se aprueban las enmiendas al texto.
SR. MÉNDEZ NÚÑEZ: Señora Presidenta, para que se apruebe el Proyecto del Senado 1434.
SRA. PRESIDENTA (GONZÁLEZ COLÓN): Ante la consideración del pleno el Proyecto del Senado 1434 según ha sido enmendado. Los que estén en la afirmativa dirán que sí. En contra no. **Aprobado**. (Énfasis suplido).

[21] P. del S. 1434, aprobado en el Senado el 29 de junio de 2012, Diario de Sesiones del Senado de 29 de junio de 2012, 16ta Asamblea, 7ma Sesión Legislativa Ordinaria, Año 2012, Vol. LX. A continuación transcribimos lo ocurrido en el hemiciclo:
SR. SEILHAMER RODRÍGUEZ: Señor Presidente, teníamos ante la consideración el Proyecto del Senado 1434 […] Para que se concurra con las enmiendas introducidas por la Cámara al Proyecto del Senado 1434.
SR. PRESIDENTE: Si no hay objeción, se concurre con las enmiendas introducidas en el Proyecto del Senado 1434 por la Cámara de Representantes. Véase Diario de Sesiones del Senado disponible en http://senado.pr.gov/Diario%20de%20Sesiones/062912.pdf (última visita el 5 de mayo de 2015).

el propósito de conocer si éstas son contradictorias o si se pueden armonizar.

Como parte del análisis de hermenéutica legal, examinaremos el significado de las palabras utilizadas por el Legislador. La palabra "compulsoria" se deriva de "compulsory" y se utiliza como sinónimo de "obligatorio". "Obligatorio" es algo que obliga a su cumplimiento y ejecución, y "obligar" es mover e impulsar a hacer o cumplir algo.[22] Por otro lado, los requisitos jurisdiccionales gozan de la característica de obligatoriedad, pues deben cumplirse antes de que el tribunal pueda conocer del pleito.[23] Por ello, el incumplimiento de un requisito jurisdiccional priva de jurisdicción al tribunal para atender los méritos de la controversia.[24] **Así, hemos expresado que si un tribunal carece de jurisdicción también carece de discreción, y los tribunales no tienen discreción para asumir jurisdicción donde la ley no la confiere.**[25] La ausencia de jurisdicción es insubsanable y cualquier sentencia dictada sin jurisdicción es nula en derecho y, por lo tanto, inexistente.[26] Valga destacar que esta defensa puede plantearse en cualquier etapa de los procedimientos.[27] En

---

[22] Real Academia Española, op. cit., pág. 1603.

[23] Véase Shell v. Srio. Hacienda, 187 DPR 109, 123 (2012).

[24] Íd.

[25] Íd.

[26] Íd.

[27] Íd., pág. 122.

contraste, la "discreción" versa sobre dejar una determinación a la voluntad de una persona.[28] Finalmente, "considerar" significa pensar sobre algo analizándolo con atención.[29]

Como expusimos, el Legislador utilizó la palabra "compulsoria" en el título de la ley ("Ley para Mediación Compulsoria"), la repitió por todo su texto, y ésta se observa repetidamente en la Exposición de Motivos de la Ley y en los informes de las comisiones de las cámaras legislativas. Asimismo, el Art. 3 de la ley menciona que será "deber" del tribunal celebrar la vista de mediación y dispone que dicho requisito es de carácter "jurisdiccional" "sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada", salvo en los casos mencionados. En contraste, la frase "en los casos que considere necesarios" es la única disposición que parece otorgar discreción al tribunal.

Ante este escenario, y luego de haber examinado la Ley para Mediación Compulsoria en unión a su propósito, disponemos que prevalece el carácter "compulsorio" y "jurisdiccional" de sus disposiciones. Reconocemos que al leer aisladamente la frase "Será deber del tribunal, en los casos que considere necesarios" del Art. 3 de la Ley para Mediación Compulsoria se desprende que ésta parece ser contradictoria al resto de la ley porque aparenta

---

[28] Real Academia Española, op. cit., pág. 832.

[29] Íd., pág. 630.

otorgar un carácter discrecional al señalamiento de vista de mediación. Sin embargo, esta frase no supone una contradicción real porque, conforme al canon de interpretación armoniosa, la misma es armonizable con las excepciones que proveyó el Legislador para el requisito de vista de mediación recogidas al final del Art. 3. De esta forma, la frase "en los casos que considere necesarios" se refiere a que el tribunal deberá ordenar la celebración de una vista de mediación cuando esté ante uno de los casos en los que el deudor no se encuentra en rebeldía ni se han eliminado sus alegaciones. Por consiguiente, al haberse logrado una interpretación armoniosa de las distintas disposiciones de la Ley para Mediación Compulsoria, no existe justificación alguna para que concluyamos que sus disposiciones son contradictorias.[30]

Nuestra interpretación es cónsona con el espíritu de la ley y la intención legislativa de otorgar a los deudores la oportunidad de conocer los remedios que pueden tener disponibles para evitar la pérdida de su hogar. **Así, resolvemos que —después de presentada la contestación a la demanda— el acto de citar para una vista de mediación es un requisito jurisdiccional que el tribunal debe cumplir en los casos en los que un acreedor solicite la ejecución de una vivienda principal de un**

---

[30] Ahora bien, la frase "Será deber del tribunal, en los casos que considere necesarios" podría resultar contradictoria al resto de la ley en el supuesto de que el Legislador no hubiese establecido las dos excepciones al requisito de vista de mediación.

**deudor, salvo en aquellos en que el deudor se encuentre en rebeldía o cuando sus alegaciones hayan sido eliminadas por el tribunal.** Estas son las únicas excepciones que estableció el Legislador. Por lo tanto, si el tribunal incumple con el requisito de ordenar la celebración de tal vista, éste no tendrá jurisdicción para proceder a dictar sentencia ni podrá ordenar la venta judicial del inmueble. En consecuencia, las sentencias que el tribunal dicte y las ventas judiciales que ordene sin haber señalado una vista de mediación serán nulas y no tendrán efecto legal alguno.

Resolver lo contrario —ello es que el tribunal tiene discreción para determinar cuáles casos tienen que referirse a mediación— sería conceder a los tribunales la facultad de legislar caso a caso cuándo un requisito es jurisdiccional y cuándo no, lo que resultaría en interpretaciones contradictorias de las diferentes salas judiciales.[31] Por ejemplo, en uno de los casos que aquí revisamos, el tribunal entendió que no procedía referir a mediación a un deudor sin capacidad económica, a pesar de que existen múltiples alternativas que no dependen de la capacidad económica del deudor.

Por último, debemos precisar que el requisito jurisdiccional que impone la Ley para Mediación Compulsoria es que ocurra un señalamiento o citación para

---

[31] Nótese que, a diferencia de otras leyes, el estatuto bajo examen no interfiere indebidamente con la función judicial reservada a la Rama Judicial. Véase Vélez Ruiz v. ELA, 111 DPR 752 (1981).

una vista de mediación, pero la extensión de dicho procedimiento y su resultado dependerán de la conducta de las partes, según lo dispuesto en la Ley para Mediación Compulsoria.[32] Es por ello que el tribunal podrá continuar con el proceso judicial cuando: (1) el acreedor acudió a la vista de mediación pero el deudor no se presentó; (2) las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo, o (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación.[33] De una vez aclaramos

---

[32] Para la citación a mediación, el tribunal podrá utilizar el formulario OAT 1698 *Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas* o el formulario OAT 1697 *Orden de Referido a Mediador (a) Privado en Casos de Ejecución de Hipotecas*. Sobre las normas que regirán el proceso de mediación, el Art. 5 de la Ley para Mediación Compulsoria, 32 LPRA sec. 2884, dispone lo siguiente: "[e]l proceso de la mediación se regirá, **en todo lo que no sea incompatible con la presente Ley**, por las disposiciones de la Ley Núm. 19 de 22 de septiembre de 1983, según enmendada, así como por cualesquiera reglamentos aprobados de acuerdo a la misma". (Énfasis suplido). La citada Ley Núm. 19 de 22 de septiembre de 1983 se creó con el propósito de promover el desarrollo de mecanismos alternos informales para la resolución de disputas y requirió que este Tribunal adoptara las reglas que fuesen necesarias para la operación de los programas y centros de métodos alternos. De conformidad con lo anterior, en el año 1998 aprobamos el *Reglamento de Métodos Alternos para la Solución de Conflictos* (Reglamento), 4 LPRA Ap. XXIX. Según lo dispuesto en el Art. 5 de la Ley para Mediación Compulsoria, los estatutos citados solo aplicarán al proceso de mediación en lo que no sean incompatibles.

[33] Véase Art. 3 de la Ley para Mediación Compulsoria, 32 LPRA sec. 2882. En lo relativo a las formas de culminar el proceso de mediación, la Regla 7.10 del *Reglamento de Métodos Alternos para la Solución de Conflictos* (Reglamento), 32 LPRA Ap. XXIX, dispone lo siguiente:
    (a) El proceso de mediación podrá darse por terminado en cualquier momento, por cualquiera de las partes involucradas o por el mediador o la mediadora.
    (b) **Una vez las partes se hayan acogido al proceso de mediación, éste podrá concluir por cualquiera de las razones siguientes:**
        (1) las partes lograron un acuerdo;
        (2) **las partes no lograron un acuerdo;**
        (3) **alguna de las partes incompareció a la vista;**
        (4) **una o ambas partes se retiran del proceso;**
        (5) se venció el término de tiempo concedido por el tribunal para la mediación y las partes no solicitaron una prórroga, o si la solicitaron, no les fue concedida, o

que el proceso judicial se deberá reanudar en la etapa en que se encontraba previo a que el tribunal ordenara la vista de mediación.

En cuanto a la aplicabilidad de esta norma, por consideraciones de política pública y orden social resultantes de la confusión que provocaba el texto de la Ley para Mediación Compulsoria, disponemos que lo aquí establecido no aplicará a las sentencias que advinieron finales y firmes. Por tal razón, su aplicación quedará circunscrita a los procedimientos judiciales que se insten con posterioridad a esta Opinión; a los pleitos que están pendientes ante el Tribunal de Primera Instancia en los que aún no se ha dictado sentencia, y a las sentencias dictadas por el Tribunal de Primera Instancia con posterioridad al 1 de julio de 2013 que no han advenido finales y firmes (fecha en que entró en vigor la Ley para Mediación Compulsoria, según su Art. 9).[34] Lo resuelto en

---

(6) **cuando, a juicio del mediador o de la mediadora, el proceso no está resultando beneficioso.**
(c) El que se dé por terminada la mediación en alguna etapa de un caso no impedirá que se recurra nuevamente a este proceso si las circunstancias son favorables. (Énfasis suplido).

Como vimos, la Regla 7.10(b)(3) del Reglamento orienta que una de las formas en las que el proceso de mediación puede darse por concluido ocurre cuando una parte no acude a la vista de mediación. Sin embargo, aclaramos que esta disposición solo aplica a la incomparecencia del deudor, pues la Ley para Mediación Compulsoria dispone que el acreedor que solicita la ejecución de un inmueble que sirve como residencia principal estará obligado a asistir a la vista de mediación —y cumplir con los requisitos de ley— como requisito previo para que el tribunal pueda dictar sentencia a su favor y para que pueda ordenar la venta judicial del inmueble.

[34] De forma similar, en Asoc. Fcias. Com. v. Depto. de Salud, 157 DPR 76, 82 (2002), dispusimos que lo resuelto en la Opinión era de aplicación a "todas las solicitudes de Certificados de Necesidad y Conveniencia que sean sometidas desde que esta decisión advenga final y firme" y "para todas aquellas solicitudes que se encuentren

la Opinión que antecede no impide que los deudores que se encuentren en rebeldía o que el tribunal haya eliminado sus alegaciones acudan a mediación, de así pactarlo.

III

Los peticionarios sostienen que el Tribunal de Primera Instancia estaba impedido de dictar las Sentencias, pues no ordenó la celebración de la vista de mediación compulsoria que exige la Ley para Mediación Compulsoria. Tienen razón. Veamos.

**CC-2014-0431**

En el primer caso, el Tribunal de Apelaciones razonó que el requisito de mediación de la Ley de Mediación Compulsoria era de carácter discrecional. En lo concerniente, acogió como cierta la alegación de Santander sobre que la señora Correa García no tenía capacidad para pagar la deuda garantizada con hipoteca, por lo que concluyó que referir al proceso de mediación hubiese sido un ejercicio fútil en este caso.

---

pendientes ante dicha agencia y para las cuales aún no se haya celebrado o señalado vista adjudicativa".

En más de una ocasión hemos expresado que una decisión puede tener tanto un efecto prospectivo como retroactivo. Sobre esto, en Isla Verde Rental v. García, 165 DPR 499, 505 (2005), manifestamos que "la absoluta retroactividad sería la muerte de la seguridad y la de la confianza pública, y la absoluta irretroactividad sería la muerte del desenvolvimiento del derecho". La decisión sobre la aplicación de una norma jurisprudencial constituye un ejercicio discrecional que muchas veces depende de la situación fáctica, circunstancias del caso en particular y consideraciones de equidad y hermenéutica. Íd., págs. 505-506. Algunos criterios para declarar la aplicación retroactiva o prospectiva de una determinación judicial son: el propósito que persigue la nueva regla para determinar si su retroactividad lo adelanta; la confianza depositada en la antigua norma, y el efecto de la nueva regla en la administración de la justicia." Íd., pág. 505; véase también Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 393-94 (2012).

Primeramente, como explicamos, la Ley para Mediación Compulsoria le impone al tribunal, como requisito de carácter jurisdiccional, la obligación de señalar una vista de mediación en todos los casos en los que se solicite la ejecución de un inmueble que se utiliza como residencia principal, salvo en aquellos en los que el deudor se encuentre en rebeldía o cuando el tribunal haya eliminado sus alegaciones. Ambas excepciones pretenden penalizar la falta de diligencia en el trámite judicial. Como recordamos, la señora Correa García había contestado la demanda, no estaba en rebeldía y el tribunal no había eliminado sus alegaciones. Por tal razón, el Tribunal de Primera Instancia no tenía discreción para omitir el señalamiento de vista de mediación, lo que conllevó que la sentencia dictada sea nula.

Además, aún si fuera un hecho cierto que la señora Correa García no tenía capacidad económica para continuar pagando la deuda, señalamos que procedía que se ordenara una vista de mediación para que le informaran las alternativas que existen en el mercado que no dependen de la capacidad económica de un deudor. Algunas de estas son: la venta corta (conocida como "short sale", en ésta el acreedor acepta una suma menor al balance del préstamo para cancelar el mismo, lo que permite al deudor hipotecario vender la propiedad), la dación en pago o entrega voluntaria de título, o algún otro remedio que

evite que el deudor pierda su hogar o que, de perderlo, se minimicen las consecuencias negativas sobre el deudor.

**CC-2014-1062**

Como mencionamos, en el segundo caso, la señora Antony Ríos presentó su argumento sobre la procedencia de la vista de mediación por primera vez ante el Tribunal de Apelaciones. Ante esto, el señor Santana Serrano planteó que no procedía atender dicho argumento porque éste no se había presentado ante el Tribunal de Primera Instancia, y que aún si se atendiera: (1) la Ley para Mediación Compulsoria no le aplica debido a que él no es una entidad bancaria o crediticia, (2) procedía dictar sentencia a su favor porque la señora Antony Ríos no se opuso a la moción de sentencia sumaria, y (3) la vista de mediación es de carácter discrecional y no se justificaba su celebración en este caso.

Primeramente debemos señalar que, aunque no fue la mejor práctica, la señora Antony Ríos podía plantear por primera vez el incumplimiento con la Ley para Mediación Compulsoria ante el Tribunal de Apelaciones, pues los señalamientos sobre falta de jurisdicción pueden presentarse en cualquier etapa del procedimiento.

En segundo lugar, reconocemos que el señor Santana Serrano tiene razón al señalar que ciertas disposiciones de la Ley para Mediación Compulsoria y su Exposición de Motivos solo hacen referencia a los acreedores que son entidades bancarias o crediticias. Sin embargo, estas

referencias son vestigios del proyecto de ley original. En particular, el Art. 2 del P. del S. 1434 definía al acreedor hipotecario como "entidad o banco debidamente autorizados […] para conceder préstamos con garantía hipotecara para vivienda principal […]". Debido a que dicha definición no incluía a todas las personas que son capaces de otorgar una hipoteca de conformidad con nuestro estado de Derecho, las Comisiones del Senado de Puerto Rico recomendaron enmendar dicho artículo para incluir como acreedores, entre otros, a las personas naturales. Esta recomendación se incorporó al texto del Art. 2, y así enmendado se aprobó por ambas cámaras legislativas.[35] Ahora, el Art. 2 (c) de la Ley para Mediación Compulsoria dispone que "Acreedor hipotecario: Significa **cualquier persona natural** o jurídica o una entidad prestataria o financiera o un banco […]". (Énfasis suplido). Al examinar el texto claro del Art. 2 (c), no

---

[35] Véase Informe de las Comisiones de Banca, Asuntos del Consumidor y Corporaciones Públicas y de lo Jurídico Civil del Senado de Puerto Rico, al P. del S. 1434 de 25 de febrero de 2010, y Entirillado del Informe. Fundados en una ponencia de la Oficina del Comisionado de Instituciones Financieras, las comisiones expusieron lo siguiente:
> "**De conformidad con nuestro estado de derecho, un acreedor hipotecario es aquella persona natural o jurídica que otorga un préstamo de dinero a otra (obligación principal), garantizada con un inmueble que pertenece en propiedad a la persona que lo hipoteca y sobre el cual se tiene libre disposición, o en caso de no tenerla, se halle legalmente autorizado al efecto.** […]
> [Sin embargo,] el P. del S. 1434 aparenta limitar el proceso de mediación a la eventualidad que intervenga una institución hipotecaria como acreedor hipotecario. De ser correcta su inferencia, recomienda a esta Comisión que […] al definir acreedor hipotecario, esta Comisión podría considerar la figura de la hipoteca a tenor con las disposiciones del Código Civil y de la Ley Hipotecaria, y de Institución Hipotecaria a tenor con las disposiciones de la Ley Núm. 97 de 5 de junio de 1973, según enmendada, conocida como Ley de Instituciones Hipotecarias y su correspondiente Reglamento." (Énfasis suplido).

existe duda de que el señor Santana Serrano es un acreedor sujeto a las disposiciones de la Ley para Mediación Compulsoria.

En tercer lugar, señalamos que aun cuando se desprende del expediente que la señora Antony Ríos incumplió con varias órdenes del tribunal, lo cierto es que dicho foro no anotó su rebeldía ni eliminó sus alegaciones. Por ello, el tribunal estaba impedido de dictar sentencia antes de referir el caso a mediación.

**IV**

Por los fundamentos expuestos, revocamos las sentencias dictadas por el Tribunal de Apelaciones y ordenamos la devolución al Tribunal de Primera Instancia para que ordene la celebración de una vista de mediación en cada caso.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Banco Santander de Puerto Rico<br><br>Recurridos<br><br>v.<br><br>Brenda Correa García<br><br>Peticionaria<br><br>Ismael Santana Serrano<br><br>Recurrido<br><br>v.<br><br>Gloria Antony Ríos<br><br>Peticionaria | CC-2014-0431<br>Cons. con<br>CC-2014-1062 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 16 de septiembre de 2016.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos las sentencias dictadas por el Tribunal de Apelaciones y ordenamos la devolución al Tribunal de Primera Instancia para que ordene la celebración de una vista de mediación en cada caso.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo