Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| BANCO POPULAR DE PUERTO RICO<br><br>Demandante - Apelados<br><br>v.<br><br>VÍCTOR RAMÓN GONZÁLEZ GONZÁLEZ, SU ESPOSA ALICE MABEL ROSA CONDE GIORDANO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Demandados – Apelantes | KLAN202300793 | Apelación procedente del Tribunal de Primera Instancia, Sala de Vega Baja<br><br>Civil núm.: BY2019CV00620<br><br>Sobre: Procedimiento *In Rem* sobre Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

En un procedimiento de ejecución hipoteca, el Tribunal de Primera Instancia ("TPI") dicto sentencia sumaria a favor del banco luego de que los demandados le solicitaran la devolución del asunto al proceso de mediación. Según explicamos en detalle a continuación, concluimos que se debió devolver el caso al proceso de mediación, por el mismo haber concluido en un momento en que todavía estaba pendiente una oferta del banco para resolver la reclamación de forma extrajudicial.

**I.**

En febrero de 2019, el Banco Popular de Puerto Rico (el "Banco") presentó la acción de referencia (la "Demanda"), sobre ejecución de hipoteca, en contra del Sr. Víctor Ramos González, su esposa, Sa. Alice Mabel Rosa Conde Giordano y la sociedad legal de gananciales compuesta por ambos. Se alegó que los demandados eran dueños de un inmueble (la "Propiedad") ubicado en el

municipio de Vega Baja y que, sobre la Propiedad, constituyeron una hipoteca garantizada por un pagaré (el "Pagaré") por la suma principal de $197,191.00. El Banco alegó que los demandados incumplieron con los términos del Pagaré y que, por haberse acogido a un proceso federal de quiebra, solo procedía el cobro de la deuda contra la Propiedad.

Luego de varias instancias procesales, el Banco solicitó que el caso fuese referido al Centro de Mediación (el "Centro"), por virtud de lo dispuesto en la Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley 184-2012, 32 LPRA 2881 ("Ley 184"). El TPI refirió el caso al Centro.

El **3 de febrero de 2020**, el Centro le informó al TPI que las partes no llegaron a un acuerdo.

En lo pertinente, en julio de 2022, el Banco solicitó la continuación de los procedimientos. Expuso que el caso había sido paralizado por la pandemia, pero que la correspondiente moratoria había expirado. Además, aseveró que el caso había estado bajo evaluación por el "Departamento de Mitigación de Pérdidas", pero que dicha evaluación había concluido "sin que se concretara una alternativa de mitigación".

Poco después, ese mismo mes de julio, el Banco presentó una Solicitud de Sentencia Sumaria *In Rem* (la "Moción").

En respuesta, el 2 de agosto de 2022, los demandados solicitaron la paralización del caso y que se devolviera el mismo al procedimiento de mediación. Plantearon que ellos habían llegado a un "acuerdo con el Banco Popular bajo el procedimiento de *loss mitigation* a los efectos de llevar a cabo un *short sale* de la propiedad". Sostuvieron que, el **30 de enero de 2020**, el Banco había autorizado por escrito "la venta corta de la propiedad", pero que "por razón de la pandemia, el asunto quedó paralizado". A este

escrito, los demandados anejaron la referida carta del Banco, de 30 de enero de 2020 (la "Carta del Banco").

En agosto de 2022, el TPI ordenó la continuación de los procedimientos, mas no adjudicó explícitamente la solicitud de los deudores de que el asunto se devolviera a mediación. El TPI sí ordenó a los demandados exponer su postura en cuanto a la Moción.

En septiembre de 2022, el Banco se opuso a la solicitud de que el caso fuera devuelto a mediación. Señaló que, según la Carta del Banco, los demandados tenían hasta el 13 de febrero de 2020 para "comunicarse con el Banco para concretar el acuerdo", mas ello no ocurrió. El TPI, una vez más, ordenó a los demandados presentar su oposición a la Moción y no resolvió expresamente la solicitud de estos de devolver el caso a mediación.

En octubre de 2022, los demandados presentaron un escrito en el cual insistieron en que debía devolverse el caso a mediación. Anejaron una carta que ellos enviaron al Banco, con fecha de **17 de enero de 2020**, mediante la cual solicitaron disponer de la Propiedad a través de un *short sale*. También anejaron una carta de ellos al Banco, de **24 de agosto de 2020**, suscrita por su representación legal, en la cual se indicó que los demandados continuaban interesados en la alternativa del *short sale,* la cual deseaban realizar "a la brevedad posible" por contar con un "prospecto comprador", que habían contratado un segundo *realtor* con tal fin y que estaban "a la merced" del Banco al respecto. Los demandados resaltaron que el Banco nunca contestó esta última carta.

Mientras tanto, en octubre de 2022, el Banco solicitó la paralización de los procedimientos a raíz del paso del huracán Fiona. El TPI decretó la paralización de los procedimientos hasta el 20 de diciembre de 2022.

El 4 de enero de 2023, el Banco solicitó la continuación de los procedimientos. Expuso que, según sus récords, el *realtor* de los demandados había indicado que estos no tenían comprador y que el Banco había intentado comunicarse con los demandados, sin éxito, por lo cual el Banco había "remov[ido] la alternativa de *short sale*". Arguyó que, si los demandados tenían interés en dicha alternativa, debieron comunicarse oportunamente con el Banco.

En febrero de 2023, el TPI dejó sin efecto la paralización del caso y ordenó la continuación de los procedimientos.

El 16 de junio, el TPI notificó una sentencia sumaria mediante la cual declaró con lugar la Demanda y ordenó la ejecución de hipoteca (la "Sentencia").

El 5 de julio (primer día laborable luego del sábado 1 de julio), los demandados solicitaron la reconsideración de la Sentencia. Los demandados anejaron una declaración jurada en la cual aseveraron que, durante la vista de mediación del 28 de enero de 2020 (dos días antes de que se emitiera la Carta del Banco), se le había informado al Centro que el Banco había aprobado la alternativa del *short sale.* Aseveraron que el Banco le había indicado luego que no podían proceder con el *short sale* hasta que el Banco no tuviese la "aprobación del inversionista", pero el Banco nunca se comunicó con ellos para notificarles que podían proceder con la transacción. También aseveraron que el Banco nunca les informó por escrito que se hubiese "cancelado y/o cerrado el proceso de *loss mitigation*".

Luego de que el Banco presentara una oposición a la solicitud de reconsideración, el TPI denegó la misma mediante una Orden notificada el 8 de agosto.

Inconformes, el 7 de septiembre, los demandados presentaron el recurso que nos ocupa; formulan el siguiente señalamiento de error:

EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL DICTAR SENTENCIA SUMARIA Y AL DECLARAR NO HA LUGAR LA SOLICITUD DE RECONSIDERACIÓN A

PESAR DE QUE SURGE DEL EXPEDIENTE JUDICIAL QUE LA SENTENCIA SUMARIA DEL 16 DE JUNIO DE 2023 ES NULA POR HABERSE EMITIDO SIN JURISDICCIÓN, YA QUE EL PROCESO DE MEDIACIÓN NO CUMPLIÓ CON LOS REQUISITOS DE LA LEY NÚM. 184-2012.

El Banco presentó su alegato en oposición. Resolvemos[1].

**II.**

El fin de la mediación compulsoria es promover que se pueda lograr un acuerdo mediante el cual se evite la ejecución de la propiedad. *Franklin Credit Management Corp. v. George Riviello*, 209 DPR 555 (2022); *Bco. Santander v. Correa García,* 196 DPR 452, 472 (2016).

La mediación compulsoria establecida por la Ley 184 es un requisito jurisdiccional sin cuyo cumplimiento el tribunal no podrá dictar sentencia ni ordenar la venta judicial de un inmueble que se utiliza como residencia principal. *Bco. Santander v. Correa García,* 196 DPR 452 (2016); *Franklin Credit Management Corp. v. George Riviello,* 209 DPR 555 (2022). Por tanto, en caso de que el tribunal no cumpla con el requisito de ordenar la vista de mediación, carecerá de jurisdicción para emitir sentencias y ordenar ventas o subastas judiciales. *Oriental Bank v. Caballero García*, 2023 TSPR 103, pág. 10.

El tribunal podrá continuar el proceso judicial cuando: (1) el acreedor acudió a la vista de mediación, pero el deudor no se presentó; (2) las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo, o (3) el deudor

---

[1] El Banco plantea que estamos impedidos de considerar el error señalado por los demandados porque estos pudieron haber solicitado a este Tribunal que revisara la determinación interlocutoria del TPI de continuar con el caso. No obstante, la norma es que una parte no está obligada a solicitarnos la revisión de todo dictamen interlocutorio del TPI, so pena de que se entienda renunciado un planteamiento al respecto en apelación. Puesto de otra forma, ante un dictamen interlocutorio adverso en un caso civil, una parte puede optar por solicitar la revisión inmediata del mismo o por aguardar a una posible apelación para plantear el asunto. Incluso, aun si se solicita la revisión interlocutoria de un asunto, si este Tribunal deniega la expedición del auto, ordinariamente el asunto se puede formular nuevamente en apelación.

incumplió con los acuerdos contraídos como resultado del proceso de mediación. *Íd.,* pág. 11.

**III.**

Concluimos que, ante los hechos incontrovertidos de este caso, el TPI debió abstenerse de considerar la Moción y, en vez, debió referir el caso nuevamente al Centro de Mediación. Adviértase que, menos de una semana antes de que el Centro cerrara el proceso a principios de 2020, el Banco les había notificado a los demandados que aceptaba su oferta de realizar un *short sale*. Este proceso estaba pendiente de concluir cuando el Centro, de forma inoportuna, dio por concluida la mediación.

Más aún, los demandados le comunicaron al Banco, por escrito, varios meses después (agosto), que permanecían interesados en realizar el *short sale* y que esperaban la aprobación del Banco. Tampoco hay controversia sobre el hecho de que el Banco, aunque alega que se le comunicó que no había comprador, en momento alguno contestó esta última comunicación ni tampoco le notificó por escrito a los demandados que había revocado su oferta escrita en torno al *short sale* o que de algún otro modo había dado por concluido el proceso de *loss mitigation*.

En las particulares circunstancias de este caso, el proceso de mediación concluyó de forma prematura y, por tanto, el mismo no cumplió con su propósito. Así pues, el TPI debió abstenerse de dictar sentencia; en vez, procedía ordenar la reapertura del proceso ante el Centro de Mediación para la evaluación de posibles alternativas aceptables para ambas partes en esta etapa. Únicamente agotado debidamente este proceso es que el TPI estaría facultado para adjudicar la Moción.

**IV.**

Por los fundamentos antes expuestos, se revoca la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores compatibles con lo aquí resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del

Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones