EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Scotiabank de Puerto Rico<br><br>    Recurrido<br><br>        v.<br><br>Rafael Machargo Chardón, su Esposa Josefina Maria Olivella Zalduondo y la sociedad legal de bienes gananciales compuesta por ambos<br><br>    Peticionarios | Certiorari<br><br>2017 TSPR 179<br><br>198 DPR ____ |

Número del Caso: CC-2017-702

Fecha: 10 de octubre de 2017

Región Judicial de San Juan - Fajardo

Abogados de la parte peticionaria:

Lcdo. Francis Daniel Nina Estrella
Lcdo. Iván Passarell Jové

Abogado de la parte recurrida:

Lcdo. Lynn Carey Feliz

Materia: Sentencia del Tribunal con Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Scotiabank de Puerto Rico

     Recurrido

       v.

Rafael Machargo Chardón, su     CC-2017-0702
 Esposa  Josefina  María
Olivella  Zalduondo  y  la
sociedad  legal  de  bienes
gananciales  compuesta  por
       ambos

     Peticionarios

**SENTENCIA**

En San Juan, Puerto Rico, a de 10 de octubre de 2017.

El 15 de agosto de 2017 el Sr. Rafael Machargo Chardón, la Sra. Josefina María Olivella Zalduondo y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto "los peticionarios") presentaron un recurso de *certiorari* ante este Tribunal mediante el cual peticionaron la revisión de la sentencia emitida por el Tribunal de Apelaciones el 22 de mayo de 2017 en el caso <u>Scotiabank de Puerto Rico v. Rafael Machargo Chardón, su esposa Josefina María Olivella Zalduondo t/c/c Josefina M. Olivella Zalduondo y la Sociedad Legal de Bienes Gananciales compuesta por ambos,</u>

KLCE2016-1852.[1] En ésta, el Foro Apelativo Intermedio modificó la determinación del Tribunal de Primera Instancia y permitió que cada parte compareciera a la vista de mediación con o sin representación legal, indistintamente de la decisión de la parte contraria. Tras considerar el recurso de *certiorari*, así como la petición en auxilio de jurisdicción, los Jueces y Juezas de este Tribunal se encuentran **igualmente divididos** en cuanto a su expedición. Por lo tanto, conforme a la Regla 4, inciso (a), del Reglamento de este Tribunal Supremo,[2] se expide el referido recurso y se confirma el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió una Opinión Disidente a la cual se unió la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Kolthoff Caraballo disiente sin opinión. El Juez Asociado señor Feliberti Cintrón se encuentra inhibido.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

---

[1] Asimismo, el 16 de agosto de 2017 los peticionarios presentaron una *Moción urgente en auxilio de jurisdicción para que se paralicen los procesos ante el tribunal de primera instancia, incluyendo la continuación de la vista de mediación*.
[2] 4 LPRA Ap. XXI-A.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Scotiabank de Puerto Rico

     Recurrido

     v.

Rafael Machargo Chardón, su     CC-2017-0702
esposa Josefina María Olivella
Zalduondo y la sociedad legal
de bienes gananciales
compuesta por ambos

     Peticionarios

**Opinión Disidente emitida por el Juez Asociado SEÑOR RIVERA GARCÍA al cual se une la Jueza Asociada SEÑORA PABÓN CHARNECO y el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.**

En San Juan, Puerto Rico, a 10 de octubre de 2017.

La controversia que se presentó a nuestra consideración nos otorgaba la oportunidad de expresarnos, por segunda ocasión, sobre la Ley para Mediación Compulsoria y Preservación de tu Hogar en procesos de Ejecuciones de Hipotecas de una Vivienda Principal, _infra_, que tiene como fin el proteger los hogares de los deudores hipotecarios. Particularmente, nos permitía clarificar ciertas incongruencias existentes en la normativa legal actual y justipreciar si un acreedor hipotecario y su representante legal se encuentran forzados a comparecer a la vista de mediación compulsoria.

Sin embargo, cuatro miembros de este Tribunal dejan pasar esta oportunidad. Por estar en desacuerdo con este proceder y debido a la importancia del tema, disiento.

Pasemos a enunciar los hechos pertinentes a la controversia.

I

El 3 de junio de 2015, Scotiabank de Puerto Rico (Scotiabank o recurrido) instó una demanda en cobro de dinero y ejecución de hipoteca contra el Sr. Rafael Machargo Chardón, la Sra. Josefina María Olivella Zalduondo y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto "los peticionarios"). Tras varios trámites procesales, el 2 de mayo de 2016 los peticionarios presentaron su alegación responsiva y solicitaron que el caso fuera referido al proceso de mediación compulsoria. El Tribunal de Primera Instancia accedió a dicha petición y se pautó la vista de mediación compulsoria.

Previo a que se celebrara la vista de mediación, los peticionarios requirieron al foro de instancia que ordenara la comparecencia de Scotiabank y de su representante legal al proceso. Dicho petitorio se basó en la *Ley para Mediación Compulsoria y Preservación de tu Hogar en procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, Ley Núm. 184-2012, 32 LPRA sec. 2881 (Ley Núm. 184-2012) y en el Art. 3 del Aviso General del Negociado de Métodos Alternos para la Solución de Conflictos del 17 de junio de 2013 (Aviso General).

En desacuerdo, el recurrido argumentó que la Ley Núm. 184-2012 no establecía que los representantes legales tenían que comparecer a la vista de mediación. Adujo, también, que el Art. 3 del Aviso General lo que hace es compeler a las partes y a sus representantes legales a acudir al proceso cuando un tribunal lo ordena. Estimó que, en ausencia de orden al efecto, los abogados de las partes no tenían que asistir a la vista de mediación.

Trabada la controversia en el Tribunal de Primera Instancia, ese foro acogió el planteamiento de Scotiabank. No conteste con este curso decisorio, y tras solicitar la reconsideración sin éxito, los peticionarios presentaron un recurso de *certiorari* en el foro apelativo intermedio. Apuntaron que el foro sentenciador incidió al acoger la objeción del recurrido respecto a la comparecencia de las partes y sus representantes a la vista de mediación. El Tribunal de Apelaciones resolvió que, dado a la naturaleza jurisdiccional de la mediación compulsoria, se garantizaba la viabilidad del proceso si recaía en cada parte la decisión de comparecer a la vista de mediación con o sin representación legal. Consecuentemente, modificó la orden del Tribunal de Primera Instancia y dispuso que cada parte podía asistir a la vista de mediación compulsoria con o sin representación legal, indistintamente si la parte contraria se encontraba representada.

Aún insatisfechos con este proceder, los peticionarios instaron un recurso de *certiorari* ante este Tribunal con los señalamientos de errores siguientes:

**Primer Error:** No haber decidido sobre el requerimiento hecho desde el momento inicial del caso por la parte demandada-recurrida, es decir un funcionario de la institución bancaria, quien compareciera a la mediación hipotecaria compulsoria, y no un representante autorizado sin capacidad de negociar, como de facto hace la parte demandante.

**Segundo Error:** La decisión de no requerir de forma compulsoria la comparecencia de los abogados y abogadas, y hacerla discrecional tratándose de un proceso de mediación compulsoria.

**Tercer Error:** Decidió de forma incorrecta el Tribunal de Apelaciones al haber decidido en función de un documento interno de la Oficina de Administración de Tribunales al cual las partes de ordinario no tienen acceso a, pero que el mismo también no está dirigido a estas, sino y de forma única y exclusiva, a los jueces y juezas del sistema judicial de la isla. Se trata de un documento interno, el cual no es parte de la legislación ni reglamentación que rige la mediación hipotecaria en Puerto Rico.

En esencia, los peticionarios arguyen que la Ley 184-2012, de forma implícita, exige que las partes asistan al proceso. Adujeron que Scotiabank contrató una compañía privada para que le representara en el proceso de mediación. Señalan que esa entidad no está facultada para tomar decisiones toda vez que tienen que remitir los asuntos a la oficina de mitigación de pérdidas de la institución bancaria. Sostienen que esa compañía no puede asistir en representación del recurrido ya que es la institución financiera, a través de un oficial, la que debe participar del proceso. Puntualizan que el Tribunal de Apelaciones no atendió este planteamiento. De otro modo, estiman que el Aviso General establece que el tribunal puede compeler a las partes y a los abogados a comparecer al proceso. Argumentan que en las mediaciones compulsorias

en EE.UU. y Canadá, las partes deben presentarse con sus representantes legales si en el pleito civil son representadas por estos. Finalmente, consideran que la Oficina de Administración de los Tribunales (OAT) interpretó erróneamente la Ley Núm. 184-2012, al promulgar la Carta Circular Núm. 30 y el Aviso General. Alegan que el Reglamento de Métodos Alternos para la Solución de Conflictos (Reglamento de Métodos Alternos) se difundió para atender procesos de mediación voluntaria.

El 25 de agosto de 2017, Scotiabank presentó su oposición. Expresó que esto era un asunto interlocutorio que solo podíamos revisar una vez el Tribunal de Apelaciones emitiera una sentencia final. Además, adujo que en los foros inferiores no se discutió la designación del banco a personas privadas o contratistas independientes para que comparecieran al proceso de mediación. Igualmente, sostuvo que la ley no exigía que los representantes legales acudieran al proceso de mediación, salvo que el tribunal ordenara lo contrario.

Con este cuadro fáctico, expondremos la normativa legal aplicable al asunto ante nos.

## II

La Asamblea Legislativa promulgó la Ley Núm. 184-2012 con el propósito de "proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis

económica".[3] Asimismo, el Legislador al aprobar el estatuto reconoció que

> [l]a crisis económica en Puerto Rico ha afectado grandemente a nuestra ciudadanía, quienes se han visto privados de su derecho propietario de poder tener su residencia propia. Los préstamos hipotecarios contienen en su mayoría cláusulas de aceleración y otros procesos para asegurar la acreencia por parte del acreedor hipotecario. La ciudadanía en general desconoce de los tecnicismos y los procesos complejos de todas las obligaciones legales incurridas en un préstamo hipotecario, requiere de mayor orientación sobre dichos procesos. … El Gobierno Estatal, al igual que el Gobierno Federal, debe colaborar y buscar alternativas que logren disminuir los procesos de ejecución de hipotecas y evitar al máximo posible que nuestros ciudadanos sigan perdiendo sus propiedades.[4]

Por estos motivos, la Ley Núm. 184-2012 "concede a las partes una vista de mediación en la que el deudor podrá obtener información sobre los remedios que tiene disponibles para evitar la pérdida de su residencia principal, y a su vez, se le provee la oportunidad de sentarse a negociar con su acreedor".[5] En consecución de esos fines, su Art. 3 dispone que

> [s]erá deber del tribunal, en los casos que considere necesarios, dentro de los sesenta (60) días después de presentada la alegación responsiva por parte del deudor hipotecario demandado y antes de que se señale la conferencia con antelación al juicio, bajo apercibimiento de desacato, una vista o acto de mediación compulsorio que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta

---

[3] _Banco Santander de Puerto Rico v. Correa García_, 2016 TSPR 201, págs. 9-10.
[4] Exposición de Motivos de la Ley Núm. 184 del 13 de febrero de 2012, Leyes de Puerto Rico, pág. 1666.
[5] Banco Santander de Puerto Rico v. Correa García, supra, págs. 9-10.

judicial de una propiedad residencial que constituya una vivienda principal.[6]

Además, el estatuto, al definir el término **mediación compulsoria**, estableció que en esta sesión

> el **acreedor hipotecario** notificará al deudor hipotecario de todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal. El propósito u objetivo será poder llegar a un acuerdo o modificación que le permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal.[7]

Por otro lado, la Ley Núm. 184-2012 facultó a la OAT para que redactara y aprobara un reglamento, o enmendara cualquier reglamento aplicable, a los fines de establecer el proceso a seguirse en su implementación.[8] En vista de ello, el 11 de junio de 2014 la entonces Directora Administrativa de los Tribunales adoptó la Circular Núm. 30 del año fiscal 2012-2013 donde dispuso que

> [l]os métodos alternos para la solución de conflictos, incluyendo la mediación, se regulan en la Rama Judicial a través del Reglamento de Métodos Alternos para la Solución de Conflictos. **Examinando el Reglamento de Métodos Alternos para la Solución de Conflictos a la luz de lo establecido en la Ley 184-2012, concluimos que el mismo no requiere enmiendas para ajustarlo al estatuto. El proceso de mediación se regirá por la Ley Núm. 19 de 22 de septiembre de 1983, según enmendada y el Reglamento de Métodos Alternos para la Solución de Conflictos, según enmendado.** Esto incluye lo relacionado a los aspectos procesales, términos, comunicación entre las partes, el (la) mediador(a), el tribunal y otros. **Cualquier aspecto**

---

[6] 32 LPRA sec. 2882.
[7] 32 LPRA sec. 2881.
[8] 32 LPRA sec. 2886.

que deba ser objeto de aclaración, se atenderá oportunamente por medio de directrices emitidas y divulgadas por el Negociado de Métodos Alternos para la Solución de Conflictos… El Juez o la Jueza informará a las partes que **cualquier persona que comparezca en su representación** a la reunión de mediación compulsoria debe tener autoridad para tomar decisiones a nombre de la parte representada. Los(as) representantes de cualquiera de las partes deberán acreditar su carácter representativo, así como la autoridad para tomar decisiones de la parte representada.

Por otra parte, dado a que se facultó al Negociado de Métodos Alternos para la Solución de Conflictos (Negociado) para aclarar cualquier asunto, el 17 de junio de 2013 dicho ente publicó el mencionado Aviso General y consignó en su Art. 3 que

[p]or mandato de la ley 184-2012, el Tribunal **podrá** ordenar **a las partes y a sus representantes legales** la comparecencia a una sesión obligatoria de mediación, bajo pena de desacato. Ante este mandato de ley, se dispone la participación obligatoria en un proceso de mediación, por tanto, las partes tendrán que comparecer y participar del proceso de mediación, aunque no estarán obligadas a concluir el mismo con un acuerdo.

Finalmente, puesto a que se hizo extensivo el Reglamento de Métodos Alternos para la Solución de Conflictos (Reglamento de Métodos Alternos), hemos de considerar la Regla 7.12, la cual preceptúa lo relativo a la comparecencia de los abogados en las sesiones de mediación voluntaria. La aludida regla establece que

[e]n las sesiones conjuntas se permitirá la participación de los abogados y de las abogadas con el consentimiento de las partes y del mediador o de la mediadora. De aceptarse la participación de los

abogados o de abogadas en las sesiones conjuntas, el mediador o la mediadora requerirá que cada parte esté así representada, y a los abogados y a las abogadas les aplicarán las mismas normas que le apliquen a las partes.

Tras exponer el marco de Derecho aplicable, pasemos a discutir los errores señalados por los peticionarios.

**III**

En primer lugar, los peticionarios arguyeron que la comparecencia de los abogados a la vista de mediación compulsoria es indispensable. Debemos aclarar que si bien la Ley Núm. 184-2012 no dispone nada sobre el particular, el Reglamento de Métodos Alternos permite la participación de los abogados en el proceso si tanto las partes como el mediador consienten. Incluso, el Aviso General precitado dispone que un tribunal **<u>puede</u>** exigirle a las partes y a sus representantes legales que comparezcan a la sesión de mediación. En vista de lo anterior, es evidente que existe una incongruencia en lo que se dispone en el Reglamento de Métodos Alternos y lo que establece el Aviso General que debía ser aclarada por este Tribunal. Ello, toda vez que el primero requiere que todas las partes consientan, mientras que el segundo deja este asunto a discreción del tribunal.

En segundo lugar, los peticionarios argumentaron que Scotiabank, a través de algún oficial, es quien tiene que comparecer al proceso de mediación y que dicha institución no puede ser representada por una compañía privada. Para atender esta controversia debíamos hacer alusión a la Ley Núm. 184-2012, que al crear el proceso de mediación

compulsoria solo se refiere a **"las partes"**. Además, el estatuto cuando definió el término de mediación compulsoria le impuso al **acreedor hipotecario** la obligación de notificar al deudor todas las alternativas disponibles para evitar la ejecución de hipoteca o venta judicial. No obstante ello, la Circular Núm. 30 aparenta admitir que una persona con autoridad para tomar decisiones comparezca a la vista de mediación compulsoria **en representación** de alguna de las partes. En otras palabras, a pesar que la ley ordena al acreedor hipotecario asistir a al proceso de mediación, la Circular Núm. 30 permite que el acreedor hipotecario esté representado por alguien que tenga capacidad para tomar decisiones.

Tal y como anteriormente puntualizamos, las inconsistencias entre la Ley Núm. 184-2012, que ordena la celebración de una vista de mediación compulsoria como requisito jurisdiccional para poder ejecutar una hipoteca, y las normas adoptadas por la OAT y el Negociado hacían imprescindible que nos expresáramos sobre este asunto. Máxime, cuando ponderamos que se trata de un proceso donde se ve afectado el hogar del deudor hipotecario, quien como reconoció la Asamblea Legislativa no necesariamente cuenta con el conocimiento legal para defender sus derechos. Incluso, cuando reflexionamos que la mayoría de los préstamos hipotecarios son contratos de adhesión que convierten a los deudores hipotecarios en la parte débil de la relación contractual. Después de todo, es en consideración de ello que la Rama Legislativa le impuso al

acreedor hipotecario el deber de notificarle al deudor todas las alternativas viables para evitar la ejecución de hipoteca o venta judicial.

En el día de hoy, desafortunadamente, cuatro de mis compañeros y compañeras fallan en ver la importancia de expresarnos sobre el particular y optan por declarar *no ha lugar* el auxilio de jurisdicción y la petición de *certiorari* presentado por la parte peticionaria. Su curso decisorio provoca que la votación del Tribunal quede igualmente dividida, dado a la inhibición de uno de los Jueces Asociados. De ese modo, avalan este proceder y actúan en contravención de la Ley Núm. 184-2012 y los fines que el estatuto persigue. Tal actuación conlleva que el proceso de mediación compulsoria se convierta en una vista pro forma, sin impacto o beneficio alguno para el deudor. En desacuerdo con la decisión de la mayoría y por las razones previamente esbozadas, disiento.

Edgardo Rivera García
Juez Asociado