EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Franklin Credit Management Corp.<br><br>Recurrido<br><br>v.<br><br>Linda George Riviello<br><br>Peticionaria | Certiorari<br><br>2022 TSPR 70<br><br>209 DPR \_\_\_\_ |

Número del Caso: CC-2018-1071

Fecha: 3 de junio de 2022

Tribunal de Apelaciones:

> Panel I

Abogado de la parte peticionaria:

> Lcdo. Juan J. González Elizalde

Abogada de la parte recurrida:

> Lcda. Áurea Y. Rivera Alvarado

Materia: Ley de Mediación Compulsoria - El mecanismo de mediación compulsoria establecido en la Ley Núm. 184-2012 solo aplica cuando la propiedad por ejecutar constituye una residencia o vivienda principal, según definido en la ley.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Franklin Credit Management
Corp.

    Recurrido

        v.

Linda George Riviello

    Peticionaria

CC-2018-1071      Certiorari

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 3 de junio de 2022.

Este caso nos presenta la oportunidad de reafirmar el alcance de la *Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal*. En particular, debemos resolver si el mecanismo de mediación compulsoria aplica cuando la propiedad por ejecutar no constituye una residencia o vivienda principal, según definido en la ley.

Por los fundamentos que exponemos a continuación, contestamos la interrogante en la negativa.

I

Este caso se originó mediante la presentación de una demanda sobre cobro de dinero y ejecución de hipoteca por parte de Scotiabank de Puerto Rico (Scotiabank) contra la Sra. Linda George Riviello (peticionaria). Scotiabank alegó que el 15 de octubre de 2007 la peticionaria suscribió un pagaré hipotecario por $804,600 a favor de la Cooperativa Abraham Rosa o a su orden.[1] Arguyó que la peticionaria incumplió con los términos del pagaré, al no efectuar los pagos correspondientes. Añadió que era sucesor en derecho y tenedor de buena fe del pagaré hipotecario. Así, solicitó al Tribunal de Primera Instancia que declarara "ha lugar" la demanda y condenara a la peticionaria al pago de las sumas adeudadas o en su defecto ordenara la venta de la propiedad en subasta pública.

Luego de emplazar a la peticionaria por edicto y transcurrido el término para contestar la demanda, Scotiabank presentó una *Moción solicitando anotación de rebeldía y sentencia*. No obstante, posteriormente, la peticionaria contestó la demanda y negó las alegaciones. Arguyó que cuando se realizara el descubrimiento de prueba estaría en posición de hacer una alegación responsiva y que desconocía los detalles de las aseveraciones contenidas en la demanda. Además, presentó varias defensas afirmativas y,

---

[1] En lo pertinente a la controversia que nos ocupa, la Escritura de Hipoteca incluye una cláusula adicional sobre segunda residencia que establece lo siguiente:

> **6. *Ocupación*.** El deudor ocupará y utilizará la Propiedad solo como segunda residencia. *Escritura de Hipoteca,* Apéndice de la Petición de *certiorari*, pág. 146.

en particular, alegó que Scotiabank se rehusó a restructurar o modificar el préstamo hipotecario. Con relación a la controversia en este caso, es importante adelantar que la peticionaria no alegó nada relacionado a si la propiedad en cuestión era su residencia principal o su residencia secundaria.

Posteriormente, Scotiabank presentó una Mo*ción para que se dicte sentencia sumaria*. En respuesta, la peticionaria presentó una *Moción solicitando mediación compulsoria al amparo de la Ley Núm. 184 del 2012; y/o prórroga para contestar la moción de sentencia sumaria.* En lo pertinente, la peticionaria argumentó que como la solicitud de la recurrida iba dirigida a que el foro de instancia ordenara la ejecución de hipoteca sobre su propiedad residencial, lo que correspondía era que se celebrara un proceso de mediación compulsoria.

A esos efectos, el Tribunal de Primera Instancia notificó una Orden en la que refirió el caso al proceso de mediación compulsoria. Además, dispuso que, si las partes no llegaban a un acuerdo o estipulación, la peticionaria tendría 15 días para replicar a la Mo*ción para que se dicte sentencia sumaria.* No obstante, la peticionaria solicitó -en dos ocasiones- cambiar las fechas pautadas para la mediación compulsoria porque estaría fuera de Puerto Rico.

Luego de varios trámites procesales, el foro de instancia celebró la conferencia inicial. Allí, la peticionaria informó que presentó su oposición a la

sentencia sumaria presentada por Scotiabank. Añadió que el caso fue referido a mediación compulsoria, pero que no se concretó porque -a pesar de que ambas partes asistieron- Scotiabank tenía instrucciones de no participar del proceso. Para sustentar lo anterior, argumentó que de la minuta originada por el mediador surgía que una de las partes no aceptó participar del proceso. En respuesta, Scotiabank informó que ese día presentó su oposición a la moción de la peticionaria. Además, alegó que de la minuta del mediador surgía que ambas partes habían asistido al Centro de Mediación Compulsoria, pero no se obtuvo un resultado positivo. Luego de escuchar ambos planteamientos, el Tribunal de Primera Instancia concedió un término a las partes para que presentaran una moción conjunta y el informe de conferencia inicial. Además, el tribunal señaló fecha para la vista de conferencia inicial.

Posteriormente, Scotiabank reiteró su solicitud de sentencia sumaria e informó que la peticionaria presentó una oferta de pago, pero esta fue rechazada. Por su parte, la peticionaria solicitó la desestimación de la demanda y replicó la solicitud de Scotiabank. En resumen, reiteró sus planteamientos y solicitó al foro de instancia que desestimara el caso o que ordenara a la recurrida a participar del proceso de mediación compulsoria.

En respuesta, Scotiabank se opuso a la desestimación de la demanda. En síntesis, informó que estaba en la mejor disposición de orientar a la peticionaria en cuanto al

programa de mitigación de pérdidas (*loss mitigation*), pero para ello era imperativo que esta presentara los documentos requeridos.

Luego, el Tribunal de Primera Instancia ordenó a Scotiabank a orientar y a proveer a la peticionaria las opciones existentes en el mercado. Además, instruyó a que en la reunión estuvieran los abogados de las partes y que luego presentaran al tribunal una moción informativa con el detalle de los resultados de esta.

A raíz de lo anterior, las partes presentaron una *Moción conjunta en cumplimiento de orden.* En particular, informaron al tribunal que llevaron a cabo una reunión en las oficinas de *loss mitigation* de Scotiabank y que llegaron a un acuerdo de enviarse recíprocamente documentos con miras a lograr un *short payoff* o *short sale.* Luego de evaluar la moción conjunta, el foro de instancia paralizó los procedimientos.

Sin embargo, más adelante Scotiabank solicitó la continuación de los procedimientos y alegó que luego de la reunión en las oficinas de *loss mitigation* la peticionaria no entregó los documentos requeridos para completar la solicitud y no se volvió a comunicar. El Tribunal de Primera Instancia le concedió a la peticionaria un término para expresarse en cuanto a la continuación de los procedimientos, pero esta no lo hizo.

Así las cosas, Scotiabank presentó una *Solicitud de Sentencia Sumaria* donde expuso los hechos que no estaban en

controversia. Por su parte, la peticionaria reiteró la solicitud de desestimación y alegó que en el proceso de *loss mitigation* hizo una oferta de *payoff* por $360 mil, pero Scotiabank hizo caso omiso.

Evaluado el caso, el Tribunal de Primera Instancia emitió sentencia sumaria solicitada por Scotiabank y, en consecuencia, ordenó a la peticionaria a efectuar el pago de las sumas adeudadas o en su defecto la venta de la propiedad en subasta pública. En lo pertinente, el foro de instancia recogió como parte del tracto procesal que "[e]n cumplimiento con la Ley Núm. 184-2012, las partes fueron referidas al proceso de mediación compulsoria. No obstante, el Centro de Mediación de Conflictos informó que las partes no aceptaron participar del proceso de mediación, por lo que el proceso judicial continuó".[2] Añadió que, posteriormente, se paralizaron los procedimientos con miras a que las partes llegaran a un acuerdo. No obstante a lo anterior, el Tribunal de Primera Instancia puntualizó que como la peticionaria no entregó los documentos requeridos para completar el trámite de la división de *loss mitigation*

---

[2] *Sentencia Sumaria*, Apéndice de la Petición de *certiorari*, págs. 125-126. Adviértase que la apreciación del foro de instancia con respecto al formulario cumplimentado por el mediador fue desacertada. Esto, pues el tribunal obvió que el mediador marcó el encasillado que especifica que el acreedor hipotecario no brindó al deudor hipotecario la orientación requerida por la Ley Núm. 184-2012. De lo anterior, instancia debió concluir que Scotiabank no cumplió con el requisito jurisdiccional de brindarle al deudor todas las alternativas disponibles en el mercado. No obstante, en este caso debemos resolver, como cuestión de umbral, si a la peticionaria le asistía el derecho a la mediación compulsoria estatuido en la Ley Núm.184-2012.

el caso continuó y procedió a dictar sentencia sumaria a favor de Scotiabank.

En desacuerdo, la peticionaria solicitó la reconsideración. En resumen, reiteró que Scotiabank no cumplió con el requisito jurisdiccional de mediación compulsoria como tampoco con la orden para llevar a cabo un proceso en la división de *loss mitigation* porque -a pesar de que le enviaron documentos y una oferta a Scotiabank- este no le respondió.

Luego de varios trámites procesales, Franklin Credit Management Corporation (recurrida) presentó una *Solicitud sobre sustitución de parte demandante*. Atendida la moción, el foro de instancia sustituyó a la parte demandante. Posteriormente, la recurrida solicitó la continuación de los procedimientos y replicó a la reconsideración. Evaluadas las solicitudes, el foro de instancia denegó reconsiderar su dictamen.

Inconforme, la peticionaria acudió ante el Tribunal de Apelaciones mediante una apelación y señaló que el Tribunal de Primera Instancia erró al permitir que se dictara sentencia sin cumplir con el requisito de mediación compulsoria. Por su parte, en su alegato, la recurrida argumentó que la propiedad de la peticionaria no era su residencia principal por lo que no tenía derecho a este mecanismo.

Evaluados los planteamientos de ambas partes, el Tribunal de Apelaciones confirmó la determinación del

Tribunal de Primera Instancia. En relación con la mediación compulsoria, concluyó que el proceso se completó acorde a los requisitos en ley "pues las partes no llegaron a ningún acuerdo, lo cual constituye una de las instancias por las que se puede dar por terminado un proceso de dicha índole".[3] Así, dispuso que la peticionaria no logró controvertir los hechos materiales que formuló la recurrida.

En desacuerdo, la peticionaria acudió ante esta Curia mediante la presentación de un recurso de *certiorari*. Luego de expedir el recurso, la peticionaria circunscribió su alegato al planteamiento siguiente:

> Si se celebró efectivamente un proceso de mediación entre las partes que cumpla con el requisito jurisdiccional que impone la Ley para Mediación Compulsoria y Preservación de tu Hogar en procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184 del 2012, para llevar a término un proceso judicial de cobro de dinero y ejecución de hipoteca.[4]

Con el beneficio de la comparecencia de las partes, resolvemos, no sin antes exponer el marco jurídico.

II

A.   La mediación compulsoria

Ante la crisis inmobiliaria de 2007 a 2009, el gobierno federal estableció medidas para enfrentar las repercusiones negativas que esta ocasionó. Las medidas se trabajaron con

---

[3] Sentencia del Tribunal de Apelaciones, Apéndice de la Petición de *certiorari*, págs. 25-27. Nótese que el Tribunal de Apelaciones -al igual que el Tribunal de Primera Instancia- obvió que del formulario de mediación surgía que el acreedor hipotecario no brindó al deudor hipotecario la orientación requerida por la Ley Núm. 184-2012.

[4] Alegato de la peticionaria, Apéndice de la Petición de *certiorari*, pág. 5.

el propósito de brindar un alivio tanto a los acreedores hipotecarios como a los deudores.[5] Como parte de la implementación de este esfuerzo, en Puerto Rico se creó la Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184-2012, 32 LPRA secs. 2881-2886.

En su descripción, la Ley Núm. 184-2012 estatuye que la legislación se creó para insertar "el proceso de mediación *compulsorio* entre el acreedor hipotecario en los procesos de ejecución de Hipoteca (Foreclosure) de propiedades dedicadas a vivienda en Puerto Rico". Así, la Ley Núm. 184-2012 fue creada con el propósito de proteger la propiedad principal de vivienda en Puerto Rico ante los efectos de la crisis económica que enfrentamos.[6]

De entrada, la propia Exposición de Motivos de la Ley Núm. 184-2012 describe la propiedad principal de vivienda como "aquella que se usa como hogar principal, no (second home), y que para fines de contribuciones sobre bienes inmuebles es la primera residencia o aquella que gozaría de aplicar en cada caso de una exención contributiva".[7]

---

[5] F.J. Cardona Reyes, *Mediación compulsoria en casos de ejecución de hipoteca: Un intento por ayudar al deudor hipotecario*, 9 Rev. Jur. UPR 12, pág. 13 (2018). Sin duda, además de evaluar la crisis inmobiliaria de 2007 a 2009 hay que considerar también el hecho de la crisis que enfrenta Puerto Rico. Íd., pág. 22.

[6] Exposición de Motivos de la Ley Núm. 184-2012.

[7] Íd.

Cónsono con lo anterior, la Ley Núm. 184-2012 define dos conceptos pertinentes para resolver la controversia ante nuestra consideración. Estos son: mediación compulsoria y residencia o vivienda principal. En cuanto al concepto de mediación compulsoria, la Ley Núm. 184-2012 establece que en los casos en que un acreedor pueda iniciar una demanda sobre ejecución de hipoteca "de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación […]".[8] En particular, especifica que el acreedor hipotecario tiene el deber de notificarle al deudor hipotecario todas las alternativas disponibles en el mercado con el fin de "evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal".[9] Así, la Ley Núm. 184-2012 puntualiza que el objetivo de la mediación compulsoria es  llegar a un acuerdo que permita al deudor hipotecario "establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal".[10]

En cuanto al segundo concepto, la Ley 184 define residencia o vivienda principal como "aquella que se utiliza como el hogar principal del deudor o del deudor y su familia inmediata; y que para fines contributivos sobre bienes

---

[8] Art. 2(b) de la Ley 184, 32 LPRA sec. 2881.

[9] Íd.

[10] Art. 2(e) de la Ley 184, *supra*.

inmuebles es aquella para la cual aplicaría la exención contributiva principal".[11]

Al interpretar la Ley Núm. 184-2012, este Tribunal ha establecido que la mediación compulsoria es un requisito jurisdiccional y, consecuentemente, si no se cumple con este requisito no podrá dictarse sentencia ni ordenarse la venta judicial de un inmueble que se utiliza como residencia principal.[12] Es decir, una propiedad residencial que constituya una vivienda personal del deudor.[13] Por ello, el tribunal tiene la obligación de referir el caso a mediación compulsoria en "todos los casos en los que se solicite la ejecución de un inmueble que se utiliza como residencia principal, salvo en aquellos casos en los que el deudor se encuentre en rebeldía o cuando el tribunal haya eliminado sus alegaciones".[14] Sobre estas salvedades, hemos expresado que nada impide que los deudores que estén en rebeldía o a los que el tribunal les haya eliminado sus alegaciones asistan al proceso de mediación, de así pactarlo.[15]

En cuanto a los pormenores del proceso de mediación compulsoria, la Ley Núm. 184-2012 establece que, una vez presentada la demanda y diligenciado el emplazamiento, el tribunal tendrá el deber de citar a las partes al proceso

---

[11] Íd.

[12] Bco. Santander v. Correa García, 196 DPR 452, 457 (2016).

[13] Scotiabank v. SLG Rosario-Castro, 205 DPR 537,550 (2020).

[14] Bco. Santander v. Correa García, *supra*, pág. 475.

[15] Íd.

de mediación compulsoria. Este acto será presidido por un mediador en cualquier salón del tribunal o en el lugar que las partes en acuerdo con el mediador elijan. Allí se le informará al deudor hipotecario -de forma verbal y por escrito- de todas las alternativas disponibles en el mercado. Lo anterior, para poder evitar la privación de la propiedad residencial del deudor que constituya una vivienda principal. Esto, incluye las alternativas que no dependen de la capacidad económica del deudor, tales como la venta corta ("*short sale*"), la dación en pago, la entrega voluntaria de título, y otros remedios que eviten que el deudor pierda su hogar o que, si lo pierde, se minimicen las consecuencias negativas del deudor.[16]

Otro aspecto pertinente para evaluar la controversia ante nuestra consideración y en armonía con todo lo antes mencionado, es el curso que ha seguido y el desarrollo que ha tenido la Ley Núm. 184-2012. Nótese que las enmiendas que ha sufrido la Ley Núm. 184-2012, todas, se dirigen a velar por que se cumpla la política pública de que las familias no se queden sin hogar. Entiéndase que el legislador, ha hecho varios esfuerzos conducentes a que se proteja la residencia o vivienda principal. En particular, la primera enmienda a la Ley Núm. 184-2012 tuvo el propósito de evitar que las personas de la tercera edad perdieran "su

---

[16] Art.3 de la Ley 184, 32 LPRA sec. 2882.

activo más valioso: su hogar".[17] Así, mediante la enmienda, el legislador quiso aclarar el alcance de la Ley Núm. 184-2012 y dispuso que cuando los deudores hipotecarios de la tercera edad o sus herederos pudieran enfrentarse a perder el inmueble residencial que les sirve como vivienda principal, también tienen disponible el mecanismo de mediación compulsoria.[18]

Evidentemente, todo lo anterior es indicativo de que la protección de la Ley Núm. 184-2012 opera para salvaguardar la residencia o vivienda principal.

III

La controversia ante nuestra consideración gira en torno al alcance de la Ley Núm. 184-2012. En particular, es pertinente reafirmar qué significa residencia o vivienda principal para así resolver si la propiedad de la peticionaria constituye su residencia o vivienda principal y, consecuentemente, determinar si le asiste el derecho a la celebración del proceso de mediación compulsoria. Veamos.

En esencia, la peticionaria plantea que la propiedad en cuestión es su propiedad residencial y que,

---

[17] Exposición de Motivos de la Ley Núm. 260-2018. Recordemos que, con el propósito de poder cubrir sus necesidades básicas, muchas personas de la tercera edad recurrieron al contrato de hipoteca a la inversa y luego, tras no poder cumplir con alguno de los requisitos (como por ejemplo el pago de la contribución sobre la propiedad), podían enfrentarse a un proceso de ejecución de hipoteca. Ello, a pesar de que el dinero recibido represente mucho menos que el valor real de su propiedad. Íd.

[18] Íd.

consecuentemente, le aplica el proceso de mediación compulsoria al amparo de la Ley Núm. 184-2012. Añade que el caso fue referido a mediación compulsoria, pero que no se cumplió con el requisito jurisdiccional, toda vez que no le notificaron sobre todas las alternativas disponibles en el mercado. No tiene razón sobre la cuestión de umbral.

De entrada, el título de la Ley Núm. 184-2012 especifica que el mecanismo de la mediación compulsoria será utilizado en los procesos donde el acreedor hipotecario pretenda ejecutar una hipoteca que recae sobre una vivienda principal. Más adelante, surge de la exposición de motivos que la urgencia de crear un proceso de mediación compulsoria fue con la finalidad de proteger la propiedad principal de vivienda que se usa como el hogar principal y no como un *second home*. Cónsono con lo anterior, el Legislador definió con claridad que la residencia o vivienda principal es aquella que se utiliza como el hogar principal del deudor y su familia. En otras palabras, la residencia o vivienda principal equivale a ese lugar preciado que usamos como techo, morada o guarida.

Sin duda, toda disposición relacionada al propósito de la creación de la Ley Núm. 184-2012 coincide con que el ánimo legislativo fue proteger el hogar del deudor o de este y su familia. Es decir, lo que se pretende lograr es salvar el hogar del deudor y su familia, ante el escenario en que está a punto de perder el techo en el que vive. De eso se trata la medida, pues la protección va dirigida a

ejecutar la política pública de evitar que los deudores y sus familias pierdan su hogar.

Establecido qué constituye una residencia o vivienda principal, vemos que la prueba que obra en el expediente sobre la propiedad que se pretende ejecutar y las circunstancias de la peticionaria se apartan del significado dado por el legislador. Existen elementos conducentes a concluir que la propiedad en cuestión no es la residencia o vivienda principal de la peticionaria desde antes de la presentación de la demanda. Nótese que, desde el otorgamiento del pagaré y la escritura de hipoteca se desprende que la peticionaria era vecina de New Jersey. A este acto, la peticionaria no compareció personalmente, sino a través de un poder especial otorgado a un tercero. Además, como mencionáramos, desde el principio el negocio jurídico objeto del litigio contiene en la escritura de hipoteca una cláusula adicional en la que cataloga la propiedad como una segunda residencia (*second home*) y se establece que la peticionaria ocupará y utilizará la propiedad como su segunda residencia.

Surgen del expediente otros eventos a considerar -posteriores a la presentación de la demanda- que también apuntan a que la propiedad de la peticionaria no es su residencia o vivienda principal. Nótese que de la declaración jurada presentada por el emplazador se desprende que la peticionaria le indicó que residía en Estados Unidos, que no le interesaba la propiedad y que

estaba desocupada hace años. Además, cuando el Tribunal de Primera Instancia refirió el caso a mediación compulsoria, la peticionaria presentó varias mociones para que pospusieran el acto de mediación porque estaría fuera de Puerto Rico. De igual manera, de las comunicaciones emitidas mediante carta y dirigidas a la recurrida por parte de la peticionaria surge del propio membrete una dirección postal de New Jersey.[19]

Todo lo anterior es indicativo de que la propiedad en cuestión no constituye la residencia o vivienda principal de la peticionaria. Destacamos que la peticionaria nunca ha alegado que utiliza la propiedad en cuestión como su hogar. Tampoco ofreció prueba de ello, sino que circunscribió su planteamiento a que la propiedad en cuestión es residencial y que es la única propiedad que tiene en Puerto Rico. Sin embargo y como hemos intimado, lo importante no es si la propiedad es la única que se posee en la Isla, sino si esa única es el hogar, la residencia o vivienda principal que la Ley Núm. 184-2012 pretende proteger. Así, como la propiedad objeto de ejecución no constituye una residencia o vivienda principal, requisito sin el cual no le aplicarán las disposiciones de la Ley Núm. 184-2012, no procedía la celebración de la mediación compulsoria.

---

[19] Esto coincide con la dirección brindada en una *Comparecencia especial,* mediante la cual se informó a este Tribunal del fallecimiento de la abogada que presentó el recurso de *certiorari* y en la que se nos solicitó enviar cualquier notificación a la dirección postal de la peticionaria que también era en New Jersey.

Sabemos que ante un texto claro e inequívoco debemos validar la intención legislativa.[20] Así, concluimos que la peticionaria no tiene derecho al proceso de mediación compulsoria estatuido en la Ley Núm. 184-2012.

Así, reforzamos la norma establecida sobre la interpretación de la Ley Núm. 184-2012. Desde Bco. Santander v. Correa García, *supra*, y, posteriormente, en Scotiabank de Puerto Rico v. Rosario Ramos, *supra*, este Tribunal enfatizó en que la mediación compulsoria es un requisito jurisdiccional en los casos en que el acreedor hipotecario pretenda ejecutar una residencia o vivienda principal. Es decir, la propiedad que se utiliza como el hogar principal del deudor o de este y su familia.

IV

Por todo lo anterior, confirmamos -por otros fundamentos- la sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[20] Spyder Media Inc. v. Mun. De San Juan, 194 DPR 547, 555 (2016).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Franklin Credit Management
Corp.

    Recurrido

                  CC-2018-1071      Certiorari

        v.

Linda George Riviello

    Peticionaria

SENTENCIA

En San Juan, Puerto Rico, a 3 de junio de 2022.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, confirmamos -por otros fundamentos- la sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres concurre con el resultado sin opinión escrita. La Jueza Presidenta Oronoz Rodríguez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo