ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BANCO POPULAR DE PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br><br>HECTOR MIGUEL VEGA JIMÉNEZ, OMAYRA CABÁN ACEVEDO<br><br>Parte Peticionaria | TA2025CE00306 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.:<br><br>ISCI201400810<br><br>Sobre:<br><br>Ejecución De Hipoteca: Propiedad Residencial |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2025.

Compareció ante este Tribunal la parte peticionaria, Sr. Héctor Miguel Vega Jiménez y la Sra. Omayra Cabán Acevedo (en adelante y en conjunto, "Vega-Cabán" o los "Peticionarios"), mediante petición de *certiorari* el 15 de agosto de 2025. Nos solicitaron la revocación de la *Orden* dictada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, el "TPI"), el 23 de junio de 2025, notificada y archivada al día siguiente. Mediante el referido dictamen, el foro recurrido determinó que no podía disponer de la "**Moción de Sentencia Sumaria**" en ese momento dado a que el caso estaba bajo el proceso de mediación compulsoria.

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari* solicitado y se *confirma* la *Orden* recurrida.

**I.**

Es preciso mencionar que, es la segunda ocasión que este Tribunal de Apelaciones recibe un recurso con relación al caso de autos. Siendo así, y luego de examinar nuevamente el dictamen emitido en el caso núm. KLAN202400154, adoptamos por referencia el resumen del tracto procesal

allí esbozado y procederemos a relatar los hechos pertinentes al asunto ante nuestra consideración.

El 13 de junio de 2014, Banco Popular de Puerto Rico (en adelante, "Banco Popular" o el "Recurrido") presentó una "**Demanda**" contra los Peticionarios en la cual se reclamó el cobro de dinero y la ejecución de una hipoteca que grava una propiedad inmueble ubicada en la Urbanización Hacienda Libertad, A-9 sita en Añasco, Puerto Rico.

Luego de varios trámites procesales, el 5 de julio de 2023, la señora Cabán Acevedo presentó una "**Moción Urgente Solicitando la Paralización de los Procedimientos Post Sentencia y en Solicitud de que se Ordene la Notificación Correcta de la Sentencia a Tenor con la Doctrina Reiterada en Banco Popular v. Andino Solís, 192 DPR 172 (2015)**". En esencia, adujo que, mediante su comparecencia el 11 de septiembre de 2014, notificó su dirección correcta y que el dictamen de ejecución de hipoteca resultaba inoficioso ya que ni éste, ni ningún otro trámite judicial le fue notificado a su dirección postal; por lo que estuvo impedida de defenderse adecuadamente.

De igual forma, el 10 de julio de 2023, el señor Vega Jiménez presentó una "**Moción Urgente en Solicitud de Desestimación de la Demanda por no Haberse Emplazado Conforme a Derecho al Demandado Héctor Miguel Vega Jiménez Dentro del Término Provisto por las Reglas de Procedimiento Civil**". En síntesis, se limitó a replicar sin someterse a la jurisdicción del tribunal, que no fue emplazado conforme a derecho.

En esta misma fecha, el TPI ordenó a la Secretaría a notificar correctamente la *Sentencia* a todas las partes. Posteriormente, el foro recurrido emitió una *Resolución* el 18 de agosto de 2023, notificada el 30 de agosto del mismo año, en la que declaró "No Ha Lugar" la solicitud de desestimación. Ello pues, determinó que la solicitud para el emplazamiento había sido conforme a derecho y a satisfacción del Tribunal. Expresó que, el señor Vega Jiménez tenía conocimiento del caso, más no compareció a contestar la "**Demanda**". Añadió que el Banco Popular realizó suficientes

diligencias para emplazarlo personalmente siendo estas infructuosas, por lo que procedía emplazar mediante edicto.

El 5 de septiembre de 2023, el señor Vega Jiménez radicó ante el TPI una "**Solicitud de Reconsideración y Réplica a Moción en Oposición**". Argumentó nuevamente que el diligenciamiento del emplazamiento personal era defectuoso y que, por ende, el emplazamiento por edicto resultaba nulo de su faz. El 17 de octubre de 2023, el foro de origen emitió una *Resolución* mediante la cual ordenó la notificación de la *Sentencia* en rebeldía a todas las partes. El 26 de octubre de 2023, se emitió una *Notificación Enmendada de la Sentencia en Rebeldía* dictada el 20 de enero de 2015.

Posteriormente, el 30 de octubre de 2023, el señor Vega Jiménez radicó ante el TPI una "**Solicitud de Reconsideración y de Relevo de Sentencia**". Reiteró que no había sido emplazado correctamente, por tanto, el emplazamiento por edicto al igual que la *Sentencia* eran nulos. Con la comparecencia de las partes, el 14 de noviembre de 2023, reducida a escrito el 8 de enero de 2024 y notificada el 26 de enero del mismo año, el foro *a quo* emitió *Resolución y Orden* declarando "No Ha Lugar" la "**Solicitud de Reconsideración y de Relevo de Sentencia**" presentada por el señor Vega Jiménez.

Luego de varios trámites ante el foro de instancia, los Peticionarios acudieron ante este Tribunal mediante un recurso de *Certiorari*, por estar inconformes con la denegatoria de la solicitud de reconsideración y relevo de la *Sentencia*. Evaluados los planteamientos de las partes, el 5 de septiembre de 2024, emitimos *Sentencia* mediante la cual resolvimos que la notificación fue defectuosa y que lesionó todos los procesos realizados en contra de los codemandados. De conformidad con lo solicitado, concluimos que dicho defecto resultó en la nulidad de la *Sentencia en Rebeldía*. Finalmente, ordenamos al foro de origen a notificar correctamente la *Resolución y Orden* del 19 de septiembre de 2014, notificada el 16 de octubre de 2014 a la señora Cabán Acevedo, para anunciar su representación legal y le provea un término para contestar la "**Demanda**".

En cuanto al señor Vega Jiménez, le ordenamos al TPI a reactivar los términos para anunciar su representación legal y para contestar la "**Demanda**", para que continúen los procedimientos de manera compatible con nuestro dictamen.

Conforme a lo resuelto por este Tribunal, los Peticionarios comparecieron el 21 enero de 2025 mediante una "**Moción Solicitando Paralización de los Procedimientos del Caso de Autos y en Solicitud de Orden de Referido a Mediación Compulsoria bajo la Ley 38 de 2019**". Así las cosas, el 31 de enero de 2025, el TPI emitió una *Resolución y Orden* en la que refirió el caso para la mediación compulsoria conforme a la Ley Núm. 184-2012, según enmendada, conocida como la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal", 32 LPRA sec. 2881 *et seq.* (en adelante, "Ley Núm. 184-2012"). Se hizo constar que las partes tendrían hasta el 10 de febrero de 2025, para presentar la contestación a la "**Demanda**". De igual forma, citó a las partes para una sesión de mediación el 12 de febrero de 2025, conforme al calendario del Centro de Mediación de Conflictos. Finalmente, hizo constar que "[l]a paralización de los trámites del caso a partir de que se conteste la demanda se extender[ía] hasta la fecha en que concluy[era] el trámite de mediación".[1]

Por su parte, el 7 de febrero de 2025, Vega-Cabán presentó su "**Contestación a Demanda y Reconvención**" en la cual alegó, de manera genérica, la defensa de prescripción. Posteriormente, el 11 de marzo de 2025, el TPI emitió una *Orden de Paralización,* en la que certificó que las partes se encontraban tramitando el proceso de mediación compulsoria ante el Centro de Mediación de Conflictos, por lo que paralizó todos los mecanismos de descubrimiento de prueba y los procedimientos ordinarios del caso.

Según surge de la "**Moción Informativa y en Solicitud de Término**" presentada el 20 de marzo de 2025 por Banco Popular, se informó que las partes estaban citadas a una reunión de continuación de mediación el 25 de

---

[1] *Véase*, SUMAC TA, Entrada Núm. 3, Anejo Núm. 54.

marzo de 2025. Además, se le notificó al TPI que los Peticionarios comenzaron un proceso mitigación de pérdidas ante dicha institución financiera para la modificación de la hipoteca. Más adelante, el 9 de abril de 2025, el Recurrido presentó una "**Moción Informativa**" en la que certificó que la reunión de mediación se llevó a cabo y que las partes estaban citadas para la continuación el 23 de abril de 2025. Además, hizo constar que el señor Vega Jiménez y la señora Cabán Acevedo le entregaron varios documentos para que el Departamento de Mitigación de Pérdidas del Banco continuara su evaluación.

Luego de ello, el 23 de mayo de 2025, los Peticionarios presentaron una "**Moción Solicitando Sentencia Sumaria Parcial**" en la que reiteró que la causa de acción correspondiente era un cobro de dinero. Sostuvo que la *Demanda* estaba prescrita dado a que la hipoteca se inscribió en el Registro de la Propiedad el 21 de febrero de 2023 y procedía la desestimación del pleito.

Así las cosas, el 11 de junio de 2025, el Recurrido presentó una "**Moción en Oposición a Solicitud de Sentencia Sumaria Parcial**", en la que sostuvo que la hipoteca se presentó en el Registro de la Propiedad el 22 de septiembre de 2005, al asiento número 39 del diario 726. Sostuvo que la fecha de presentación se consideraba como la fecha de inscripción para que surta sus efectos contra terceros. Además, solicitó que se mantuviera la fecha de la vista de mediación pautada.

Por su parte, el TPI emitió una *Orden,* el 23 de junio de 2025 y notificada el 24 de junio de 2025, la cual se transcribe a continuación:

[…]

El 11 de marzo de 2025, el Tribunal decretó la paralización de los procedimientos en este caso dado que las partes agotan el trámite de mediación compulsoria solicitado por la parte demandada, quien reside en la propiedad. Por ello, dado que el Centro de Mediación de Conflictos no ha notificado acuerdo o devuelto al Tribunal el caso, ni cesado su intervención, no corresponde disponer de la Moción en este momento. Queda entretenida la petición hasta que concluya el trámite en el Centro de Mediación de Conflictos.[2]

---

[2] *Véase*, <u>SUMAC TA</u>, Entrada Núm. 3, Anejo Núm. 67.

Inconforme, el 7 de julio de 2025, Vega-Cabán presentó una "**Solicitud de Reconsideración de Orden del 23 de julio de 2025 y Reiterando Solicitud de Sentencia Sumaria Parcial**". En la misma, solicitó al foro de instancia que dejara sin efecto la *Orden* emitida y que resolviera en sus méritos la *Moción Solicitando Sentencia Sumaria.*

No obstante, el 11 de julio de 2025, el TPI denegó la solicitud de los Peticionarios. A esos efectos, se transcribe la determinación del foro de instancia:

> Nos reiteramos en la orden emitida. A esta fecha las partes no han culminado el trámite de mediación compulsoria requerido por la Ley 184-2012, según enmendada.

> El Centro de Mediación de Conflictos no ha terminado su intervención y los trámites, por lo tanto, siguen paralizados.[3]

En desacuerdo con la determinación del foro *a quo*, el 15 de agosto de 2025, Vega-Cabán presentó el recurso que nos ocupa, mediante el cual le imputó al foro recurrido la comisión del siguiente error:

> Erró el Tribunal *a quo* al negarse, sin justificación valida, a resolver la controversia de derecho que se le refirió en la solicitud de sentencia sumaria parcial sobre, la realidad jurídica de que, en el presente caso, la alegada causa de acción está prescrita, por lo que, de conformidad con la Ley de Transacciones Comerciales, esa negativa del TPI constituye un craso error de derecho, por ser a todas luces contraria a lo pautado por nuestro más Alto Foro en *Oriental vs. Caballero García*, supra y a lo dispuesto en la Sección 2-118 de la Ley de Transacciones Comerciales.

El 22 de agosto de 2025, Banco Popular presentó "**Alegato de la Parte Apelada**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

La Asamblea Legislativa adoptó la Ley Núm. 184-2012, *supra*, con el fin de proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis económica en Puerto Rico suscitada en los años 2007 al 2009. Scotiabank de Puerto Rico v. SLG Rosario-Castro, 205 DPR 537, 547 (2020). Ésta dispone para un procedimiento de mediación compulsoria, previo a que se concrete un proceso de ejecución de hipoteca sobre dicha

---

[3] *Véase*, SUMAC TA, Entrada Núm. 3, Anejo Núm. 69.

propiedad principal, mediante el cual se le informará al deudor aquellos remedios alternativos disponibles para mantener el bien inmueble de que se trate. Oriental Bank v. Caballero García, 212 DPR 671, 680-681 (2023). Todo ello con el propósito de "evitar la pérdida de su residencia principal y, a su vez, le provee la oportunidad de sentarse a negociar con su acreedor". Bco. Santander v. Correa García, 196 DPR 452, 461 (2016).

Aunque en su Exposición de Motivos la Ley de Mediación dispone que se entenderá que propiedad principal de vivienda es aquella que se usa como hogar principal, no un *second home*, el referido estatuto también la define como "aquella que se utiliza como el hogar principal del deudor o del deudor y su familia inmediata; y que para fines contributivos sobre bienes inmuebles es aquella para la cual aplicaría la exención contributiva principal". 32 LPRA sec. 2881 (e).

En cuanto a la reunión compulsoria de mediación, la ley establece que ésta se celebrará en los casos en que un acreedor hipotecario vaya a iniciar un pleito de cobro de dinero y ejecución de hipoteca que pueda resultar en la venta judicial "de una propiedad residencial que constituya una vivienda principal". Franklin Credit v. George Riviello, 209 DPR 555, 564 (2022). Durante dicho cónclave, el acreedor hipotecario deberá notificarle al deudor "todas las alternativas disponibles en el mercado para evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal". 32 LPRA sec. 2881(b). Entiéndase, "una propiedad principal que constituya una vivienda personal del deudor". Franklin Credit v. George Riviello, *supra*, pág. 565. Finalmente, dicha pieza legislativa puntualiza que "[el] propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal". 32 LPRA sec. 2881 (b).

Nuestro más alto foro judicial determinó en Bco. Santander v. Correa García, *supra*, que la mediación compulsoria es un requisito jurisdiccional y **que las únicas excepciones son: (1) cuando el deudor esté en rebeldía o (2) cuando el tribunal haya eliminado sus alegaciones**. Íd., pág. 472.

En vista de ello, y en los casos que aplique, es obligación del tribunal referir el caso a mediación, pues de no hacerlo "no podrá dictarse Sentencia ni ordenarse la venta judicial del inmueble que se utiliza como residencia principal". Oriental Bank vs. Caballero García, *supra*, pág. 681. Entiéndase que cualquier sentencia dictada u orden de venta judicial emitida en contravención con lo establecido en la Ley Núm. 184-2012, *supra*, será nula y carecerá de efecto legal. Bco. Santander v. Correa García, *supra*, pág. 472.

Por otra parte, el tribunal está facultado para continuar los procedimientos cuando: "(1) el acreedor acudió a la vista de mediación pero el deudor no se presentó; (2) las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo, o (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación". Oriental Bank v. Caballero García, *supra*, págs. 681-682.

**III.**

En el caso que nos ocupa, los Peticionarios aducen que el foro primario erró al determinar que no podía disponer de la solicitud de sentencia sumaria en ese momento dado a que el caso fue referido al Centro de Mediación de Conflictos. En su escrito, plantean que, a la luz de lo resuelto en Oriental Bank v. Caballero García, *supra*, corresponde que el tribunal resolviera el planteamiento de derecho, dado a que el procedimiento de mediación compulsoria no es efectivo y conforme a lo dispuesto en dicha ley. No le asiste la razón. Veamos.

De un examen detallado del expediente apelativo ante nuestra consideración surge que el 21 de enero de 2025, los Peticionarios solicitaron la paralización de los procedimientos y que el caso se refiriera al proceso de mediación compulsoria, conforme a la Ley Núm. 184-2012, *supra*. Acorde al petitorio Vega-Cabán, el 31 de enero de 2025, el TPI refirió el caso al Centro de Mediación de Conflictos. Además, hizo constar que el caso sería paralizado a partir de la presentación de la contestación a la "**Demanda**" y se extendería hasta la fecha en que concluyera el trámite de mediación compulsoria.

Luego de ello, el 7 de febrero de 2025, los Peticionarios presentaron su "**Contestación a Demanda y Reconvención**" en la cual invocaron la defensa de prescripción. A tales efectos, el 11 de marzo de 2025, el foro de instancia certificó la participación de las partes en el proceso de mediación y paralizó todos los mecanismos de descubrimiento de prueba y procedimientos ordinarios en el caso.

Posteriormente, el 23 de mayo de 2025, el Peticionario presentó una *Moción Solicitando Sentencia Sumaria* en la cual reiteró su planteamiento de prescripción, por lo que peticionó la desestimación del pleito. Por su parte, el foro a *quo* emitió una *Orden*, la cual se transcribe de manera íntegra como sigue:

> El 11 de marzo de 2025, **el Tribunal decretó la paralización de los procedimientos en este caso dado que las partes agotan el trámite de mediación compulsoria** solicitado por la parte demandada, quien reside en la propiedad. Por ello, **dado que el Centro de Mediación de Conflictos no ha notificado acuerdo o devuelto al tribunal el caso, ni cesado su intervención, no corresponde disponer de la Moción en este momento**. Queda entretenida la petición hasta que concluya el trámite en el Centro de Mediación de Conflictos.[4]

Inconforme, el 7 de julio de 2025, el señor Vega Jiménez presentó una *Moción de Reconsideración* en la que solicitó al foro de instancia que dejara sin efecto la *Orden* emitida y que resolviera en sus méritos la *Moción Solicitando Sentencia Sumaria.* Por su parte, el 11 de julio de 2025, el foro recurrido sostuvo su determinación dado que, **en ese momento, el Centro de Mediación no había terminado su intervención**. Por ende, los trámites continuaron paralizados.

Según explicamos anteriormente, es un requisito jurisdiccional que el Tribunal refiera a las partes a un procedimiento de mediación compulsoria en los casos en que se persiga la ejecución de una hipoteca que grava la residencia principal de la parte demandada. Es imperativo que en esta reunión se le ofrezcan al deudor hipotecario todas las alternativas disponibles en el mercado para retener su vivienda principal. Entiéndase, el simple hecho de que "las partes comparezcan a una vista de mediación y

---

[4] *Véase*, <u>SUMAC TA</u>, Entrada Núm. 3, Anejo Núm. 67 (énfasis suplido).

no lleguen a un acuerdo, sin más, no es suficiente para determinar que el proceso de mediación culminó infructuosamente". Oriental Bank v. Caballero García, *supra*, pág. 684. **Los tribunales deben asegurarse de que la mediación compulsoria se llevó a cabo conforme a la Ley Núm. 184-2012, *supra*.** Íd. **Ello incluso aunque las partes no alcancen un acuerdo**. Íd.

Ahora bien, los Peticionarios basan su argumento en la determinación del máximo foro judicial en Oriental Bank v. Caballero García, *supra*. En ese caso, luego de la celebración de dos (2) reuniones, la mediadora presentó una moción informativa sobre el resultado de los procesos. En síntesis, detalló que, durante los cónclaves celebrados surgieron cuestionamientos sobre la liquidez de la deuda y otros planteamientos de derecho que sobrepasaban la autoridad del Centro de Mediación de Conflictos y que no habían sido planteados ante el foro primario. Siendo así, dio por concluida su intervención. Nuestro más alto foro resolvió que el TPI no podía disponer del caso sin tramitar la mediación compulsoria, toda vez que esto compone un requisito jurisdiccional. Expuso que la moción informativa de la mediadora, si bien devolvió el caso al TPI, ante un planteamiento de derecho, ésta no acreditó que diera cumplimiento a los requisitos en ley. Así pues, ante un argumento sobre la liquidez de una deuda, el TPI está en la obligación de resolver esta controversia previo al referido de la mediación compulsoria. De igual manera, si el caso se devuelve al foro primario sobre una cuestión de derecho que impide el proceso de mediación, una vez resuelto por el tribunal, éste se debe asegurar que se cumpla con el proceso de mediación conforme a lo dispuesto en ley.

Comenzamos por señalar que, conforme surge del legajo apelativo, el caso de autos se refirió ante el procedimiento de mediación compulsoria. Al igual que en la jurisprudencia que precede, el planteamiento de prescripción se realizó luego de que el caso se refirió al Centro de Mediación de Conflictos el 31 de enero de 2025. De una lectura del expediente es evidente que en dos (2) ocasiones el TPI hizo constar la paralización de los

procedimientos, puesto que aún continuaba activo el proceso de mediación compulsoria que mandata la Ley Núm. 184-2012, *supra.*

En la determinación recurrida, la juzgadora de instancia se negó a resolver la moción de sentencia sumaria **en ese momento**, dado a que no tenía una notificación del Centro de Mediación de Conflictos sobre los procedimientos llevados a cabo ante sí. Es decir, a la fecha en la que se presentó la solicitud de disposición sumaria de los Peticionarios no existía una certificación de que las partes hubieran llegado a un acuerdo, que la mediadora cesara su intervención o que el caso le fuera devuelto al tribunal, tras las partes completar el proceso conforme lo dispone la ley y la jurisprudencia interpretativa.

Resulta evidente que las partes se encontraban tramitando el proceso de mediación, dado a que el Recurrido presentó dos (2) mociones informativas que demostraban que dichas reuniones se llevaron a cabo y que las partes estaban inmersas en un proceso de intercambio de documentación como parte de las alternativas que se le tienen que ofrecer al deudor hipotecario. De hecho, del petitorio del Recurrido, en su *Oposición a Moción Solicitando Sentencia Sumaria*, surge su solicitud de que se mantuviera la fecha de dicha reunión.

Distinto a la controversia de la jurisprudencia anteriormente discutida, en el momento procesal en el que el TPI emitió su determinación no surgía el resultado de la reunión de mediación entre Banco Popular y los Peticionarios. Para que este caso se asemejara a lo resuelto por nuestra más alta curia era necesario que las partes completaran el proceso de mediación compulsoria en la que se acreditara que se llevó a cabo conforme a derecho o que se le planteara al mediador un asunto de derecho que le competiera al TPI resolver. Según la normativa vigente, el foro *a quo* solo podrá dictar la sentencia si las partes acudieron a una vista en la que se cumplieron con todos los requisitos de ley, pero éstas no llegaron a un acuerdo. Una vez el TPI reciba una notificación del mediador, entonces tendría jurisdicción para disponer de la controversia de derecho.

Tras una evaluación detenida del expediente a nuestra consideración, encontramos que el foro a *quo* no incidió en su determinación. Nótese que, precisamente, lo que los Peticionarios solicitan es que la juzgadora de instancia disponga del caso finalmente, por entender que el mismo está prescrito. Sin embargo, como vimos en los acápites anteriores, cualquier dictamen a esos efectos hubiera significado la emisión de una determinación nula, puesto que en ese momento el foro de instancia carecía de jurisdicción para ello. Correspondía entretener la solicitud de los Peticionarios hasta tanto no se recibiera alguna notificación del Centro de Mediación de Conflictos sobre el resultado de las reuniones llevadas a cabo como parte del trámite del caso.

Finalmente, cabe señalar, que el 24 de julio de 2025, el Centro de Mediación de Conflictos presentó una "**Moción sobre Resultado de Caso de Ejecución de Hipoteca Atendido Mediante Servicio de Videoconferencia y Cese de Notificaciones**". En ésta hizo constar que el 12 de febrero de 2025, se llevó a cabo la reunión en la que se le orientó a la señora Cabán Acevedo sobre las alternativas disponibles en el mercado para evitar la ejecución de hipoteca o venta judicial de la propiedad. **Se indicó que el señor Vega Jiménez no acudió a esta reunión**. Asimismo, se expuso que la señora Cabán Acevedo participó en otras reuniones el 25 de marzo de 2025, el 21 de mayo de 2025 y el 18 de junio de 2025. La última reunión, pautada para el 22 de julio de 2025, la parte deudora no compareció. Así pues, la mediadora dio por terminada su intervención en el caso, toda vez que, según su entender, el incumplimiento del deudor sin justa causa "se entenderá que ha desistido del proceso de mediación compulsoria y en tal caso, el Tribunal continuará el proceso judicial iniciado por el acreedor hipotecario". 32 LPRA sec. 2882.

Aunque las circunstancias cambiaron luego de la determinación recurrida, reiteramos que el TPI actuó conforme a derecho. Lo cierto es que la juzgadora de instancia no contaba con autoridad en ley para acoger la solicitud de Vega-Cabán. La petición de Vega-Cabán conllevaría a que se evadiera el requisito jurisdiccional que tienen los tribunales para emitir una

sentencia en los casos de ejecución de hipoteca. En consecuencia, no puede imputarse al foro de instancia un error al resolver con los datos y circunstancias que obraban ante su consideración en ese momento. Aun cuando surgieron elementos posteriores que alteran la realidad procesal, ello no desmerece la validez de la determinación ante ese escenario. Corresponde que el TPI evalúe la moción presentada por el Centro de Mediación de Conflictos y determine si se cumplió con las exigencias de la Ley Núm. 184-2012, *supra*, y si corresponde la continuación de los procedimientos ordinarios.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *certiorari* y *confirmamos* la *Orden* recurrida. Se devuelve el caso al foro recurrido para que se evalúe la moción presentada por el Centro de Mediación de Conflictos y se determine si se cumplieron con las exigencias de la Ley Núm. 184-2012, *supra*, y si corresponde la continuación de los procedimientos ordinarios en el caso.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones